### DARST v. MATHIESON ALKALI WORKS.

(Circuit Court, W. D. Virginia. October 31, 1896.)

1. MASTER AND SERVANT—WRONGFUL DISCHARGE—MEASURE OF DAMAGES.

When suit is brought and trial is had before the expiration of the stipulated term of service to recover damages for a breach of contract by a wrongful discharge, the recovery cannot be for the whole amount of salary for the entire term, but only for the amount thereof to the date of trial, less such sum as plaintiff has earned, or might with reasonable diligence have earned, from the time of discharge to the time of trial.

2. SAME—GROUNDS FOR DISCHARGE.

The use by a salaried employé of a corporation of insulting, disrespectful, or abusive language, to any officer or superior employé thereof, in connection with the duties of the former, or his refusal to obey, or his advising other employés to disobey, the orders of any superior, is good ground for discharging him.

Daniel·Trigg, for plaintiff.
White & Penn, for defendant.

PAUL, District Judge (charging jury). This is an action brought by the plaintiff against the defendant company to recover damages resulting from the wrongful discharge of the plaintiff from the service of the defendant company. The declaration is as follows:

"E. A. Darst. plaintiff in this cause, who is a citizen of the state of Ohio, complains of the Mathieson Alkali Works, a corporation under the laws of, and a citizen of, the state of Virginia, defendant, being summoned of a plea of trespass on the case, for that heretofore, to wit, on the 24th day of July, 1895, at Saltville, in the state of Virginia, the said defendant made and entered into an agreement and contract with the plaintiff, by which it agreed from and after the 17th day of July, 1895, and thenceforward for the period of three years, to pay to the plaintiff the sum of thirty-one hundred dollars annually, in equal monthly payments, and did provide in the said agreement that the first payment to be made in August, to wit, in August, 1895, was to be for the last fifteen days only of July, 1895; and, in consideration of the said agreement and undertaking on the part of the defendant, the said plaintiff did agree to give his entire time and attention and his best services to the defendant, in the supervision and direction of the boring and operation of its brine wells, and the general management of its brine supply, subject to the direction and approval of the defendant; and that the plaintiff's efforts should always be employed for the best interests of the company; and that any failure on his part to carry out the intent of the said agreement should constitute a breach of the same. And in order that the plaintiff might better do this, viz. better do and perform the said agreement on his part, the plaintiff agreed that he would bring his family to live in Saltville, as soon as the said defendant could furnish him quarters. And, as a condition of said agreement, it was provided that the outfit then owned by the plaintiff, and used by him for boring wells on the defendant's property, should be purchased within one month from the date of said agreement by the defendant, at a price to be mutually agreed, and that pending said settlement the said agreement should be deemed to be in effect in the same way as if no conditions were named. And the plaintiff avers that he on his part was and has been at all times ready and willing to give, and up to the time of the committing of the breach of the said named contract and agreement, as hereinafter set forth and complained of, on behalf of the defendant, did, pursuant to said agreement, give, his entire time and attention and his best services to the said defendant, in the supervision and direction of the boring and operation of its brine wells and the general management of its brine supply, subject to the direction and approval of the defendant, and did always employ his efforts for the best interests of the defendant, and did on his part carry out the intent of the said agreement, and did bring his family to live at Saltville as soon as the said defendant furnished him quarters, and did in all things do, keep, and perform the said agreement on his part. But. the plaintiff avers, the said defendant did not keep and perform the said agreement on its part, but did break and refuse to perform the same, although often requested so to do, and on the ——— day of August, 1896, willfully, and without any just or reasonable cause or excuse, dismiss the plaintiff from its service, and did refuse to allow him to continue longer in its employment. or to work or operate further under its said contract and agreement, or to fulfill the same on its part; whereby, and by reason of which said action of the said defendant, the said plaintiff hath been deprived of his employment, and hath been injured, and hath sustained damage to the amount of $8,000. And therefore the plaintiff brings his suit," etc.

The action grows out of the following contract for hiring and service:

"This agreement, dated this 24th day of July, A. D. 1895, at Saltville, Va., between the Mathieson Alkali Works, hereafter called the company, of the first part. and E. A. Darst, of the second part, witnesseth: (1) That the company, from and after 17th day of July, 1895, and thenceforward, for the period of three years, will pay E. A. Darst the sum of thirty-one hundred dollars annually in equal monthly payments; the first payment, however, to be made in August, for the last fifteen days only of July. (2) E. A. Darst will give his entire time and attention and his best services to the company, in the supervision and direction of the boring and operation of its brine wells, and the general management of its brine supply, subject to the direction and approval of the company. His efforts shall always be employed for the best interests of the company, and any failure on his part to carry out the intent of this agreement

shall constitute a breach of the same. In order that he may the better do this, he will bring his family to live at Saltville, as soon as the company can furnish him quarters. It is a condition of this agreement that the outfit now owned by E. A. Darst, and used by him for boring wells on the company's property, shall be purchased within one month by the company, at a price to be mutually agreed. Pending such settlement, however, this contract shall be deemed to be in effect in the same way as if no condition were named. In testimony whereof, the parties hereto have set their signatures, the day and year first above mentioned, the Mathieson Alkali Works signing by its assistant treasurer, John Russell Gladding.

"[Signed]                                            Mathieson Alkali Works,
                           "By John Russell Gladding, Asst. Treas.
         "[Signed]                                          E. A. Darst.
    "Witness as to both signatures:
    "[Signed]  Chas. M. Perry."

All of the evidence for the plaintiff and for the defendant being given to the jury, counsel for the plaintiff requested the court to instruct the jury as follows:

"The court instructs the jury that if they believe from the evidence that the plaintiff, E. A. Darst, was employed by the defendant, the Mathieson Alkali Works, under a contract for the·term of three years, at a salary of $3.100 per year, payable monthly; and if they further believe that the plaintiff did keep and perform the stipulations of said contract on his part, and that he was wrongfully, and without sufficient cause, discharged from the service of said defendant on the 4th day of August, 1896, and that he was paid his salary up to the date of his said discharge,—they shall find for the plaintiff. And the jury is further instructed that the plaintiff's damages is prima facie the full amount called for by the contract which remains unpaid, subject to such reduction as the jury may believe from the evidence that the defendant is entitled to by reason of any probability of the plaintiff obtaining other employment in the same line called for by the contract, if they have proof upon which to estimate such probability, which is incumbent upon the defendant to prove. If the jury cannot, from the proof, ascertain so as to estimate such probability, they may then render a verdict for the full amount of the unpaid balance called for by the contract. But the measure of damages is a question for the jury, under all the circumstances of the case."

Counsel for the defendant object to this instruction, on the ground that it does not correctly state the law as to the measure of recovery, where, as in this case, the action to recover damages for a wrongful discharge from service is brought before the expiration of the term of hiring.

The defendant requests the court to give the jury the following instruction, which, it claims, correctly states the law:

"If the jury believe from the evidence in this cause, in the light of the instructions given below, that the plaintiff is entitled to recover, then the court instructs the jury that the measure of recovery will be the amount which would have been due the plaintiff under the contract down to this date, if he had continued in the service of the defendant company."

These conflicting views as to the measure of recovery present the question for the court's decision. The confusion of the decisions and of the text writers on this subject is much greater than we would· expect to find in a question that has necessarily been many times before the courts. Much of this confusion, it seems to the court, is to be found in the text-books from the failure of the writers to·clearly present the distinction between an action brought after the expiration of the term of service and one brought during its continuance. The principle on which an employé who has been wrongfully discharged

is allowed to recover is thus stated by Justice Story in Emerson **v.** Howland, 1 Mason, 45–53, Fed. Cas. No. 4,441:

"In actions for wages brought against the employer by the servant or employé discharged without cause before the end of the contract of service, a compensation is intended to be allowed, which shall be a complete indemnity for the illegal discharge; and this is ordinarily measured by the loss of time and the expense incurred by the party."

Sedg. Dam. (4th Ed.) p. 396, note 1. In this note it is said:

"It is the actual loss, and not prospective damages, which is recoverable in these actions." "This doctrine of compensation for actual loss runs through all the authorities on this subject, and it is the fixed principle in this class of cases."

In 1 Lawson, Rights, Rem. & Prac. pp. 483, 484, § 276, after referring to the former doctrine, the measure of the servant's recovery is thus stated:

"And it is now universally held that the measure of the servant's recovery is the sum he was to receive during the term, less such sums as he may have earned or could have earned by reasonable diligence in obtaining other employment. Where the servant is employed for a term, and wrongfully discharged before the end of it, the presumption is that he is entitled to recover for the whole term, and the burden is on the defendant to show a legal excuse for not paying him the full amount for the whole term. The defendant must prove 'either that the plaintiff was actually engaged in other profitable service during the term, or that employment was offered to him and he rejected it.' If the servant finds employment at the same or higher wages, he is entitled to recover for the time actually lost; and, if he finds employment at lower wages, he is entitled to recover the difference between the amount earned and what his master had agreed to pay him. The servant may recover wages during the time he is idle, even though in his second employment he gets higher wages than under his first contract, and therefore in all he is better off than though he had not been discharged."

This doctrine manifestly applies to a case where the action is brought after the expiration of the term of service, for in the same section it is said:

"If the servant sue for the breach before the term expires, he can only recover damages up to the time when he sues; but, if he waits until the end of the term, he can recover full damages for the whole time."

In Wood, Mast. & S. p. 260, the text writer, after stating the rule in England, says:

"But I am aware of no case in this country in which a similar rule has been adopted, but, upon the contrary, the drift of American decisions is opposed to any such rule of recovery, and limits the judgment to the servant's actual loss up to the day of trial; and it would be an unsafe experiment in a case where there is a prospect of any considerable loss of time to bring an action before the period of service has expired, as there can be only one action for damages under any circumstances."

Gordon v. Brewster, 7 Wis. 355, is a leading case on this question, and is cited with approval in 1 Lawson, Rights, Rem. & Prac. p. 485, note, and by Sedg. Dam. p. 396, note. In this case the supreme court of Wisconsin says:

"Had the respondent (the plaintiff in the court below) seen fit to wait before bringing his action until the period had elapsed for the complete performance of the agreement, the measure of compensation could then have been easily arrived at. * * * But, as the case now stands, we think he was only entitled to recover his salary on the contract down to the day of trial, deducting there-

from any wages which he might have received or might have reasonably earned in the meantime. This rule appears to us to be the most equitable and safe that occurs to our minds, and the one most likely to effect substantial justice between the parties."

This is the rule the court will adopt in the case at bar. It does not see how it can adopt any other so as to guide the jury to a correct conclusion. There is no difficulty in applying the rule as to the measure of recovery where the term of service has expired. In such case the presumption is that the plaintiff is entitled to recover what he was to receive for the whole term, less such sums as he may have earned, or could have earned by reasonable diligence in obtaining other employment. In such case the whole facts are before the jury, the period of employment, the price to be paid for the service, the breach of the contract, the wages earned, or that could with diligence have been earned, by the plaintiff between the time of the breach and the expiration of the term of service. The jury has before it these substantial facts, from which they can safely compute the plaintiff's actual loss, and upon which they can safely base their verdict. But in the case at bar there are no such definite, tangible facts to be submitted to the jury. In this case there remain about 21 months of the unexpired term of service. There is no evidence before the jury on which they can make any estimate of what the plaintiff will probably be able to earn, or could, with reasonable diligence, earn, during these ensuing 21 months. He may find ready and profitable employment, or he may not find it. How can the jury enter this unexplored field of the future without facts or principles to guide them, but left to the vaguest speculation, and arrive at a just conclusion as to the plaintiff's actual loss from the breach of the contract of service? A verdict rendered under such circumstances would carry with it none of the sanctity that attaches to the verdict of a jury when it is based upon the substantial facts that are required to sustain it. If the plaintiff wished to recover as damages the whole amount remaining unpaid of the salary, and for the full term provided in the contract of service, he should have waited, before bringing his suit, until the expiration of the term of service, when he could present his case to the jury, with the evidence of accomplished facts to show the measure of his actual loss by reason of the breach of the contract of service with the defendant company.

The instruction asked for by the plaintiff is refused, and in lieu thereof the following instruction will be given to the jury by the court:

"The court instructs the jury that if they believe from the evidence that the plaintiff, E. A. Darst, was employed by the defendant, the Mathieson Alkali Works, under a contract for the term of three years, at a salary of $3,100 per year, payable monthly; and if they further believe that the plaintiff did keep and perform the stipulations of said contract on his part, and that he was wrongfully, and without sufficient cause, discharged from the service of said defendant, on the 4th day of August, 1896, and that he was paid his salary up to the date of his said discharge,—they shall find for the plaintiff. And the jury are further instructed that the measure of recovery in this case, if any, will be the amount which would have been due the plaintiff under the contract down to this date if he had continued in the service of the defendant company, less such sum as he has earned, or with reasonable diligence might have earned, from the time of the breach of the contract to the present."

The first instruction asked for by the defendant it is unnecessary to give, because the doctrine it lays down is contained in the instruction just given by the court. The second and third instructions asked for by the defendant will be given, and are as follows:

"If the jury believe from the evidence that on or about the 29th of July, 1896, the plaintiff, E. A. Darst, was guilty of the use of insulting, disrespectful, or abusive language to any officer or superior employé of the defendant company, or about them, or either of them, and in their presence and hearing, and connected with the duties of the said plaintiff as an employé of the defendant company; or if they believe from the evidence that, a few days before the plaintiff's discharge, he refused to obey the orders of any superior in position in the employment of defendant company, in matters connected with his duties as an employé of the defendant company; or if they believe from the evidence that on or about the 29th of July, 1896, the plaintiff advised any employé of the defendant company not to obey an order of a superior in employment of the said defendant company, given by said superior in a matter connected with the duties of the said employé,—then, and in either event, the court instructs the jury that such conduct on the part of the plaintiff was a sufficient cause for his discharge, and they must find for the defendant, even though they may further believe that the plaintiff was not, in fact, discharged by the defendant company for these causes, or either of them.

"If the jury believe from the evidence that Charles M. Perry was the assistant general manager of the defendant company; and that F. J. Lucas had general supervision of all departments of the defendant's works at Saltville, Virginia, outside of the alkali works proper, including the department of which the plaintiff, E. A. Darst, was foreman; and that on or about the 29th day of July, 1896, in a conversation between the said Charles M. Perry, F. J. Lucas, and the plaintiff, concerning matters immediately connected with the duties of the said plaintiff, as an employé of the defendant company, the said plaintiff was insulting, disrespectful, or abusive to the said Charles M. Perry, or the said F. J. Lucas, or either of them; and that on the following day the said F. J. Lucas, in the discharge of his duties, went to one of the wells operated by the plaintiff, and whilst there, giving the plaintiff instructions in reference to the matters embraced in the conversation of the day before, or in reference to certain other duties of the plaintiff, one Howard Darst, a brother of the plaintiff, and working under him, came up, pulled the said F. J. Lucas from his horse, threw him upon the ground, and beat him, in the presence of the said plaintiff and other employés of the defendant company under said plaintiff; that the plaintiff stood by, and, seeing the fight, failed to interfere, or refused to interfere, or said to the said F. J. Lucas, who appealed for help, 'Help yourself,' or words to that effect,—then the court instructs the jury that this was such conduct on the part of the plaintiff as justifies his discharge, and they must find for the defendant, even though they further believe from the evidence that the plaintiff was not, in fact, discharged for this cause."

Verdict for the defendant.