[L. A. No. 19209.   In Bank.   Mar. 30, 1945.]

VICTOR FENEMORE GREENE, Respondent, v. HAWAI-
IAN DREDGING COMPANY, Ltd. (a Corporation)
et al., Appellants.

Thelen, Marrin, Johnson & Bridges, Cedric L. Brash and
Bruce Walkup for Appellants.

J. P. Nunnelley and William C. Ring for Respondent.

CARTER, J.—Plaintiff was employed by defendants under
a written contract dated October 30, 1940, and executed in
Los Angeles, calling for services as an iron worker on a con-
struction job on "Pacific Islands."   His wages were fixed at
a stipulated sum per month.   Paragraph 8 of the contract

read: "If for cause the services of the Employee are not satisfactory to the Employer, or if he is not or does not show himself qualified for the position for which he is hired, or is negligent in his duties, or displays bad temper, or in the case of the immoderate use, in the opinion of the Employer, of alcoholic drinks, or the contraction or development of venereal disease, the Employee may be discharged without any further obligation resting upon the Employer. In such case his term of service will then end and he forfeits his right to salary and expense allowance for returning to the United States. It is understood that the Employee may be dismissed if requested by any Government official." It was agreed that plaintiff would pay his own expenses and transportation costs back to the United States "if he does not complete this contract, or if he is discharged in accordance with Paragraph 8." Defendants admitted the execution of the contract and that plaintiff commenced the performance thereof and continued to perform the same until April 21, 1941, but denied that he completely performed the contract or was prevented by defendants from further performance on that date, and alleged that they discharged plaintiff at said time pursuant to Paragraph 8 of the contract.

Pursuant to the provisions of the contract plaintiff was transported to and worked on Midway Island, a part of the Territory of Hawaii. The court found that plaintiff performed all of the terms of the contract to be by him performed until prevented by defendants when they "arbitrarily and without just cause, contrary to Paragraph 8, or any other provision in said contract, refused to permit the plaintiff to continue performance of said contract."

Judgment for damages for breach of contract was rendered in favor of plaintiff and defendants have appealed.

Defendants contend that the evidence is insufficient to support the judgment, and that they had just cause to discharge plaintiff under the provisions of the contract.

Viewing the evidence most favorably to plaintiff and resolving all conflicts in his favor, it appears from the record that the following facts were established.

Defendants are construction contractors holding contracts for construction work for the United States Navy. When plaintiff arrived at Midway Island on November 13, 1940, there were about 700 employees, and the crew with which he

worked numbered from fifteen to eighteen. Mr. Sheik was the general superintendent of the work on the island. Plaintiff had no trouble with any of his fellow employees or superiors. He first contacted Sheik when he called at the latter's office to offer suggestions for the improvement of the morale of the employees. To plaintiff's statement of the purpose of his visit, Sheik replied that the camp was excellently operated, and he made inquiry of plaintiff as to whether he had any trouble of which he desired to complain. Plaintiff replied in the negative. On Saturday evening, April 19, 1941, defendants posted a bulletin on the board provided therefor, announcing that commencing Monday morning, April 21, 1941, a "check in-check out" system would be followed under which the employees would stop at a booth about two and one-half blocks from the center of the construction camp, the place of work, and the mess hall, to obtain a metal disc before commencing their duties, followed by the same procedure, and leaving the disc, after quitting work. On the night of April 20, 1941, defendants moved the booth to a point near the mess hall. Defendants assert that the system was installed upon the request of the Navy to facilitate accounting. Plaintiff was one of a group of employees who read the bulletin Saturday evening. Remarks were made by some of the employees that they "would not follow it—the booth was too far away." The bulletin was generally discussed by the employees and they expressed dissatisfaction with the system.

A petition to the employers was suggested, and plaintiff and several other employees prepared one which was exhibited to, discussed by, and finally signed by about 175 employees, including the foreman of plaintiff's crew. Posted on the bulletin board on the morning of April 20, 1941, it read:

"Mr. N. B. Sheik,                                    April 19, 1941.
"General Supt.,
"NOy 3550
"Copy to
"Commander Bentrees, USNR
"Officer in Charge,
"Naval Construction Camp,
"Midway Island
"Dear Sir:
"We, the undersigned, understand that the new check-in

and check-out plan requires the employee to be on the job when the whistle blows, both at starting and quitting time. Also, that he be required to check in and out on his own time.

"If this interpretation be correct, please be advised that we believe the plan to be both unfair and unwarranted. However, if, in your opinion, we have misinterpreted the plan, we stand to be corrected.

"While it is not our intention or wish to, in any way, impede the preparedness program or to embarrass the management, *we find it necessary to reject the plan as we understand it.*

"A bulletin on the bulletin board will be sufficient to clarify the situation. "Signed" (Italics added.)

The evening of April 20, 1941, plaintiff prepared and posted on the board a notice reading:

"NOTICE TO ALL THOSE MEN WHO SIGNED THE ANSWER TO THE BULLETIN IN REFERENCE TO THE CHECK-IN AND CHECK-OUT SYSTEM. YOU ARE EXPECTED TO REPORT FOR WORK MONDAY, APRIL 21, AS PER USUAL WITH NO CHANGE IN THE PROCEDURE. "Signed V. F. Greene"

In reply to the question as to what he "meant" by the above notice plaintiff testified: "Well after we had . . . I say 'we', the group . . . after this had been talked about we didn't know exactly what to do, and it was suggested that some kind of a notice be placed on the bulletin board to inform the men as to what they should do the next morning, whether they should report to work or not report to work, in view of this stand we had taken in this little answer (the petition) we had given them to their bulletin. So several of us got together and decided the smart thing to do would be for the most of them, all that wanted to, to just go ahead and go to work the next morning and forget about it. They had moved time check shanty from where they had originally placed it up next to the mess hall so the men could make the check-in and check-out system without walking this three blocks.

"So this was posted to let them go on back to work, that is, these that wanted to do so." And further that ". . . it was our thought not to embarrass the people or to in any way obstruct the defense program, and mainly we wanted to carry

on. Q. Did you mean by that second notice for the men to go ahead and work and cooperate with the employer whatever system was used? A. I did." Plaintiff also testified that he did not influence or try to influence the other employees. On the morning of April 21, 1941, all the employees followed the new system. Although plaintiff stated in his deposition that he stood by and watched the others obtain the metal disc in conformity to the new system, he testified in court that he "couldn't get it" (the disc) because "They had a jack sticking over the top of it and said they could not give it to me." The trial court evidently accepted the latter statement as true.

Plaintiff testified that on Monday afternoon, April 21, 1941, he was summoned to Sheik's office and the following occurred: "He (Sheik) said, 'Are you the man that put that article (the petition of protest) on the bulletin board?' I said, 'I am.' He said, 'Well, for your information, this plan has been in effect for many years in the United States, and it is a written Naval order and it is going to be worked out here whether you like it or not.' I said, 'Well, for your information I just came off my job with one of these contractors and the system was not in effect there. That was in Los Angeles. Again, for your information, if you would have put on your bulletin that this was a written Naval order, this article would not have been put on the bulletin board and we probably couldn't have gotten a dozen signatures on it if we had tried.' He said, 'Well, just what is your objection to the plan?' I said, 'In the first place, there was not very much consideration given to several hundred employees on this island. In the second place, if you can't trust me to go out and do an honest day's work I see no reason why I should trust you.' He said, 'It is 2:30. You are now off the payroll.' I said, 'Thank you, sir.'"

There is no evidence that plaintiff lacked efficiency, failed to perform his duties properly, or that his employers were dissatisfied with his work. There is a sharp conflict on some of the points, but as heretofore stated, the trial court has resolved those conflicts in favor of plaintiff and it is not within our province to interfere with its findings.

Assuming that the rule establishing the "check in-check out" system was reasonable and did not impose burdens upon plaintiff in excess of his obligations under the contract of employment, and that an employee is under an implied obliga-

tion of obedience, loyalty, and to exercise diligence, it is our opinion that the trial court was justified in concluding that plaintiff did not wilfully refuse to obey the ''check in-check out'' rule or urge other employees to do so, and that defendants acted arbitrarily and without legal cause in discharging plaintiff.

On the issue of plaintiff's refusal to obey the above-mentioned rule, it is to be noted that the petition which plaintiff posted is both conciliatory and reasonable. It shows due respect for and submission to the employers' authority. It was the result of the cooperation of several employees including plaintiff, and was made after the rule was announced but before it was to become effective, and was the result of a general feeling that it was unfair. The thought is expressed therein that if the employees were wrong in their attitude toward the new rule they were willing to be corrected. They expressly stated that there was no intent to embarrass the employers. With all those factors present, it cannot be said as a matter of law that the use of the word ''reject,'' made the petition an unequivocal refusal in advance to obey the rule. The more reasonable interpretation is that the word ''reject'' conveyed the thought of an objection or protest. Moreover, when the time came for compliance with the rule on Monday, the location of the booth had been changed and all of the employees complied with the rule. The notice posted by plaintiff on Sunday night is not an unequivocal refusal in advance to obey the rule or to request that the other employees do so. On the contrary, it may well mean that the rule should be followed. Evidently the other employees so interpreted it. They obeyed the rule the following morning. We have plaintiff's testimony heretofore quoted as to the meaning of the notice which supports that interpretation. According to plaintiff's testimony he did not violate the rule on Monday morning. He could not obtain the check or metal disc apparently because the employers' agent in charge would not let him have it.

The activities of plaintiff did not constitute disloyalty or insubordination. It is evident from the foregoing discussion that plaintiff was doing nothing more than protesting or complaining to his employer concerning the ''check in-check out'' system. He did not incite his fellow employees to disobey the rule. There was a general feeling of resentment toward

the rule and the most serious thing that occurred was a general discussion on the subject which led to the petition which plaintiff posted. The notice posted on Sunday night may, as we have seen, be interpreted as not suggesting that the rule be ignored.

The days when a servant was practically the slave of his master have long since passed. In order that the dignity of the employer-employee relation be maintained and that present-day fundamental social concepts be preserved, the employee has the right without breaching his implied obligations to his employer to protest regarding working conditions and rules of his employer and request that they be altered. To that end he may discuss the subject with his fellow employees and join with them in a peaceful and orderly presentation of their grievances. Broadly viewed, such conduct is beneficial rather than detrimental to the employer's interests. It tends to improve the morale of the employee, ultimately resulting in the exhibition of greater diligence and fidelity on his part. The wisdom and importance of the right to petition is not new. The right of the governed to petition those exercising the powers of government is secured by the Constitution of the United States and this state. (U. S. Const., First Amend., Cal. Const., art. I, § 10.) The obligations of the employee in the instant case are those implied in law because considered wise policy. That policy must be applied in the light of the policy insuring the right to petition.

Such cases as *Darst* v. *Mathieson Alkali Works*, 81 F. 284, and *In re Nagel*, 278 F. 105, relied upon by defendants are not in point. They involve the conduct of an employee in inciting other employees to disobey the employer's reasonable orders, not to protest against such orders.

The judgment is affirmed.

Gibson, C. J., Traynor, J., and Schauer, J., concurred. Edmonds, J., concurred in the judgment.

SPENCE, J.—I dissent. Plaintiff brought his action upon a written contract of employment. He sought certain added compensation and transportation expenses provided for in the contract, alleging that he had fully performed his contract until discharged by defendants on April 21, 1941, "without just cause." Defendants denied that plaintiff had been dis-

charged without just cause and affirmatively alleged that plaintiff had been discharged "pursuant to Paragraph 8 of said contract and for the reason that the services of the plaintiff were not satisfactory to these answering defendants." The trial court found that on April 21, 1941, defendants "arbitrarily and without just cause" refused to permit plaintiff to continue performance of the contract. The sole question presented is whether the evidence was sufficient to support this finding.

The evidence was highly conflicting in some particulars, but even accepting plaintiff's testimony as true, such testimony affirmatively showed that there was just cause for plaintiff's discharge. The conclusion reached in the majority opinion that "plaintiff was doing nothing more than protesting or complaining to his employer concerning the 'check in-check out' system" and that "the activities of plaintiff did not constitute disloyalty or insubordination" cannot be reconciled with the admitted facts.

The notice posted by defendants on April 19th ordered the employees to follow a new procedure, known as the "check in-check out" system, commencing on April 21st. It is conceded that the adoption of such procedure by defendants had been ordered by the United States Navy and that defendants' order to the employees to follow the new procedure was a reasonable order.

On the same day, plaintiff drew up and caused to be signed by himself and other employees the notice which was dated April 19th, and which was posted on the morning of April 20th. Said notice was addressed to defendants' superintendent and a copy was sent to "Commander Bentrees, U.S.N.R., Officer in Charge, Naval Construction Camp, Midway Island." While this notice was in part in the nature of a protest, it went much further. It stated that plaintiff and the others who signed found it necessary "to reject the plan." On the evening of April 20th, plaintiff prepared, signed and posted a further notice reading as follows:

"NOTICE TO ALL THOSE MEN WHO SIGNED THE ANSWER TO THE BULLETIN IN REFERENCE TO THE CHECK-IN AND CHECK-OUT SYSTEM. YOU ARE EXPECTED TO REPORT FOR WORK MONDAY, APRIL 21, AS PER USUAL WITH NO CHANGE IN THE PROCEDURE.

"SIGNED V. F. GREENE"

There can be no question concerning the import of these notices posted by plaintiff. Defendants' notice of April 19th had ordered a change in procedure commencing on April 21st. Plaintiff's notice which bore the same date and which was posted on the morning of April 20th, constituted an unequivocal expression of an intention "to reject the plan." Plaintiff's notice which was posted on the evening of April 20th, constituted an obvious attempt to incite his fellow-signers of the first notice to carry out their expressed intention "to reject the plan" by reporting to work on April 21st "as per usual with no change in the procedure." There is only one reasonable interpretation which plaintiff's employers, his fellow-employees or any other person could have given to the words used by plaintiff in these notices, and the admitted posting of these notices constituted just cause for plaintiff's discharge. (Lab. Code, § 2856; *May* v. *New York Motion Picture Corp.*, 45 Cal.App. 396 [187 P. 785]; *Bank of America* v. *Republic Productions, Inc.*, 44 Cal.App.2d 651 [112 P.2d 972]; *In re Nagel*, 278 F. 105; *Darst* v. *Mathieson Alkali Works*, 81 F. 284.)

But aside from these written expressions of plaintiff's attitude toward defendants' order, plaintiff's testimony concerning his attitude as orally expressed on the afternoon of April 21st, showed ample ground for the discharge which followed. He was still doing more than merely objecting to the new procedure despite his knowledge at that time that the United States Navy had required the adoption of such procedure. He testified: "He (defendants' superintendent) said, 'Well, just what is your objection to the plan?' I said . . . 'if you can't trust me to go out and do an honest day's work, I see no reason why I should trust you.' " Thereupon plaintiff was discharged.

An attempt is made in plaintiff's briefs to explain away these definite expressions of plaintiff's defiance of a reasonable order of his employers by reference to certain testimony of plaintiff which purported to show that he did not intend to "reject the plan" and did not intend to encourage others to do likewise. But defendants were entitled to act upon the only reasonable interpretation which could be placed upon the written notices posted by plaintiff, and were also entitled to act upon plaintiff's continued attitude of defiance which was orally expressed by him to defendants' superintendent

immediately before his discharge. The testimony of plaintiff to which he refers and which purports to show that his real attitude and intentions were contrary to his expressed attitude and intentions, can have no bearing upon the right of his employers to discharge him.

In conclusion, it should be stated that this case concerns none of the broad questions relating to the rights of employees "to protest regarding working conditions" or "to make a peaceful and orderly presentation of these grievances" as indicated in the majority opinion. The existence of these rights cannot be questioned but neither these rights nor the rights of employees to organize, to bargain collectively, to strike, to picket, or to boycott are involved. This case presents only the limited question of the right of an individual employee to recover certain benefits under a written contract of employment, by the terms of which contract said benefits were to be denied in the event of the discharge of the employee for cause.

I am of the opinion that the undisputed evidence shows that the plaintiff was discharged for just cause and that the judgment should therefore be reversed.

Shenk, J., concurred.