[No. G002409. Fourth Dist., Div. Three. Jan. 28, 1987.]

GAIL F. DABBS, Plaintiff and Appellant, v.
CARDIOPULMONARY MANAGEMENT SERVICES et al., Defendants
and Respondents.

COUNSEL

William M. Crosby for Plaintiff and Appellant.

Joseph Posner as Amicus Curiae on behalf of Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Dennis A. Gladwell and John F. Meyers for Defendants and Respondents.

OPINION

TROTTER, P. J.—Plaintiff, Gail F. Dabbs, appeals from a judgment entered in favor of defendants, Cardiopulmonary Management Services and Greatwest Hospitals, Inc.

Plaintiff, a certified respiratory therapist, brought suit against defendants, her employers, for alleged wrongful termination and intentional infliction of emotional distress. She claimed on April 29, 1983, she was terminated after she refused to work the night shift at San Clemente General Hospital. Her action was in protest of the working conditions on that shift since defen-

dants required her to work with only one other therapist, who was not qualified to handle the assigned work. Plaintiff alleged she informed defendant's employee, Tim Belew, "she could not work in the respiratory care department as the only experienced therapist when customarily there were three experienced therapists to service the patients on the subject 'P.M.' shift." She alleged she was terminated in retaliation for her refusal to continue working under conditions that would jeopardize "the health, safety and physical well-being of the patients." Hence, she claimed she was terminated for protesting conditions which "violate fundamental public policy of the State of California."

Defendants' motion for partial summary adjudication of issues claimed there were no triable issues of material fact as to the following issues: "(1) Plaintiff has failed to allege, and cannot prove, a public policy violation which could support a cause of action for wrongful termination of employment in this context. (2) Plaintiff's refusal to work on April 29, 1983 was not due to conditions that would have endangered patient health, safety and physical well-being. (3) Plaintiff had no basis to refuse to work on April 29, 1983."

The trial court agreed with defendants' first position, that an employee cannot state a cause of action for wrongful termination based on violation of an alleged public policy which is not defined by, or embodied in, a statute or regulation unless the employee can show he was discharged for refusing to engage in illegal activity. In its decision and order, the trial court stated: "It appears that California Courts, at this juncture in the developing state of the law in this area, have not yet approved of a cause of action which is based on general public policies, as opposed to those created or embodied by statute or regulation: and, in this context, it is clear that the defendants did not require plaintiff to engage in any illegal or criminal conduct which would support an action under *Peterman[n]* v. *International Brotherhood of Teamsters,* 174 Cal.App.2d 184 (1959), and *Tamany [sic]* v. *Atlantic Richfield Co.,* 27 Cal.App.3d 167 (1980) [27 Cal.3d 167]."

Because of its decision on the public policy issue, the trial court found the other issues raised by defendants to be moot. The parties stipulated the trial court could treat the motion for summary adjudication of issues as one for summary judgment since plaintiff desired to appeal the trial court's ruling on the public policy issue. However, at the outset of the hearing on the motion, the trial court stated, "Is there any reason why the Court should not treat this as a Motion for Judgment on the Pleadings?" Additionally, at oral argument on this appeal the parties agreed the issue before this court is the

propriety of granting judgment on the pleadings. Thus, we do not review a summary judgment but rather a judgment on the pleadings.[1]

 As was said by the court in *Tiffany* v. *Sierra Sands Unified School Dist.* (1980) 103 Cal.App.3d 218, 225 [162 Cal.Rptr. 669], "Whenever the declaratory judgment is on the pleadings, the standard of appellate review is the same as for a judgment of dismissal which follows the sustaining of a general demurrer. The issue on appeal then becomes whether a cause of action has been stated, and the allegations in the complaint must be taken as true in resolving the question." (See also *Nunn* v. *State of California* (1984) 35 Cal.3d 616, 620-621 [200 Cal.Rptr. 440, 677 P.2d 846]; *White* v. *County of Orange* (1985) 166 Cal.App.3d 566, 569 [ 212 Cal.Rptr. 493]; *C.L. Smith Co.* v. *Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 745 [135 Cal.Rptr. 483].) Accordingly, we consider whether a cause of action for wrongful or tortious discharge can be stated when the plaintiff relies on a general public policy rationale and is unable to point to violation by the employer of a specific legislative act or rule.

The developing cause of action for wrongful termination or tortious discharge has evolved based on three different rationales. Applying traditional contract principles, courts have found an implied promise that the employment relationship will not be terminated absent a finding of good cause. (See *Koehrer* v. *Superior Court* (1986) 181 Cal.App.3d 1155, 1166-1167 [226 Cal.Rptr. 820]; *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 324-325 [171 Cal.Rptr. 917].) Tort damages have been allowed where courts have found an employee's termination constitutes breach of the covenant of good faith and fair dealing implied in every contract. (See *Khanna* v. *Microdata Corp.* (1985) 170 Cal.App.3d 250, 260-261 [215 Cal.Rptr. 860]; *Rulon-Miller* v. *International Business Machines Corp.* (1984) 162 Cal.App.3d 241, 247-248 [208 Cal.Rptr. 524]; *Cleary* v. *American Airlines, Inc.* (1980) 111 Cal.App.3d 443, 453 [168 Cal.Rptr. 720].) Finally, courts have held an employee may pursue a tort remedy where his or her termination constitutes a violation of fundamental principles of public policy. (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330].)

The public policy rationale was enunciated in *Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184 [344 P.2d 25]. In that case plaintiff employee was subpoenaed to testify before the California Legis-

---

[1]The complaint contained a second cause of action for intentional infliction of emotional distress. As part of their agreement, the parties stipulated that plaintiff could preserve her action for emotional distress should the appellate court reverse the trial court's ruling on the motion for summary adjudication of issues. (However, cf. *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148 [233 Cal.Rptr. 308, 729 P.2d 743].)

lature. He was instructed by his employer to give false testimony and then discharged when he testified truthfully. The employee brought suit alleging wrongful discharge, and a judgment on the pleadings for the defense was reversed on appeal. The court stated, "[T]he right to discharge an employee under [an employment contract] may be limited by statute [citation] or by considerations of public policy." (*Id.,* at p. 188.) Although there was no statute directly prohibiting discharge of an employee under the circumstances involved in *Petermann,* the court held, "[t]he public policy of this state *as reflected in the Penal Code sections* referred to above[2] would be seriously impaired if it were to be held that one could be discharged by reason of his refusal to commit perjury." (*Id.,* at p. 189.)

*Petermann* was affirmed by the California Supreme Court in *Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d 167. In *Tameny* the plaintiff's employer fired him after 15 years of service because plaintiff refused to participate in an illegal scheme to fix retail gas prices. The California Supreme Court reversed a trial court order sustaining a demurrer to plaintiff's tort cause of action. Again, there was no specific statutory prohibition against terminating an employee under the circumstances. Still the court held, ". . . the relevant authorities both in California and throughout the country establish that when an employer's discharge of an employee violates *fundamental principles of public policy,* the discharged employee may maintain a tort action and recover damages traditionally available in such actions." (*Id.,* at p. 170, italics added.)

Here we must decide "How may public policy be determined?" Defendants contend "that an employee alleging retaliatory discharge must claim and prove that he was terminated for refusing to engage in illegal conduct or for asserting rights embodied in statutes or regulations as opposed to a more 'general' public policy." We disagree. We do not believe the existing case law requires such a narrow interpretation. In *Petermann* the court discussed the meaning of the term "public policy," which it noted " 'is inherently not subject to precise definition.' " (*Petermann* v. *International Brotherhood of Teamsters, supra,* 174 Cal.App.2d at p. 188.) The court noted the term has been defined as " ' ". . . that principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good. . . ." ' " (*Ibid.*) In *Koehrer* v. *Superior Court, supra,* 181 Cal.App.3d at page 1165, the court went further and stated explicitly, "The 'public policy' limitation and the 'violation of statute' limitation pointed out in *Patterson* [*Patterson* v. *Philco Corp.* (1967) 252 Cal.App.2d 63 (60 Cal.Rptr. 110)] are in effect two aspects of a single doctrine: fundamental public policy may be expressed either by the Legislature in a statute

---

[2]The court in *Petermann* referred to Penal Code sections 118 (perjury) and 653f (solicitation of perjury).

or by courts in decisional law. Insofar as affording remedies to an employee discharged in contravention of a fundamental public policy is concerned, it is immaterial whether the public policy is proclaimed by statute or delineated in a judicial decision."

In *Hentzel* v. *Singer Co.* (1982) 138 Cal.App.3d 290 [188 Cal.Rptr. 159], Hentzel claimed he was fired "in retaliation for his protesting what he considered to be hazardous working conditions caused by other employees smoking in the workplace." (*Id.,* at p. 293.) The appellate court considered the question whether Singer had violated public policy by discharging Hentzel for protesting the lack of smoking regulations, and determined that it had. The court stated, "California has long maintained a policy of protecting the right of employees to voice their dissatisfaction with working conditions." (*Id.,* at p. 296.) The court went on to note various Labor Code sections which generally require employers to provide a safe and healthful work place for employees and stated, "It requires little analysis to perceive that the legislative purpose underlying these provisions would be substantially undermined if employers were permitted to discharge employees simply for protesting working conditions which they reasonably believe constitute a hazard to their own health or safety, or the health or safety of others." (*Id.,* at p. 298.)

In *Hentzel* there was no express statute dealing with control of smoking in the workplace, nor was there any legislative provision preventing discharge should an employee protest such conditions. Still the court looked to California's general policy of protecting employees in the workplace as embodied in various provisions of the Labor Code. The court then implied a public policy against discharging an employee for protesting reasonably perceived hazardous conditions in the workplace.

Defendants rely on *Shapiro* v. *Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467 [199 Cal.Rptr. 613]. In that case, plaintiff, an at-will employee, was fired without cause. Plaintiff did not allege a retaliatory firing or that he was fired because he refused to obey an unlawful directive. Plaintiff alleged only that he was fired without cause and that "his termination was wrongful and malicious because [his employer] knew that an at-will employee could not be terminated except for good cause." The appellate court affirmed an order sustaining defendant's demurrer to a cause of action for wrongful discharge based on the theory that the termination violated public policy. The court stated "In the case before us, Shapiro has failed to allege that he was terminated either in retaliation for asserting his statutory rights, or for his refusal to perform an illegal act at the request of his employer, or because his employer directly violated a statute by dismissing him.... The complaint does not set forth any facts which show that his 'employer's motivation for discharge contravened some *substantial public*

*policy principle . . . .' (Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d at p. 177, italics added.)" *(Shapiro* v. *Wells Fargo Realty Advisors, supra,* 152 Cal.App.3d at p. 477.)

*Shapiro* is clearly inapposite. Here, plaintiff alleged she *was* discharged in retaliation for her protest of hospital working conditions which might have an adverse effect on the health and safety of patients. The allegations in this case are similar to those considered in *Hentzel.*

Defendants claim language in *Shapiro* supports their contention that plaintiff cannot state a cause of action for wrongful discharge where he or she is unable to point to a violation of a specific legislative act or rule by the employer. They point to the *Shapiro* court's statement, "Shapiro urges that it is the public policy of California to promote job security and stability in the community, and that Wells Fargo violated this 'public policy' in dismissing Shapiro without cause. Although there is dictum in *Tameny* suggesting that there can be a public policy sufficient to support a cause of action for wrongful discharge absent statutory authority, no California cases have so held; however, one Court of Appeal case has expressly stated that courts have no power to declare public policy in wrongful discharge cases without statutory support. (See *Mallard* v. *Boring* (1960) 182 Cal.App.2d 390. . . .)" *(Shapiro* v. *Wells Fargo Realty Advisors, supra,* 152 Cal.App.3d at p. 477; and see *Tyco Industries, Inc.* v. *Superior Court* (1985) 164 Cal.App.3d 148, 159 [ 211 Cal.Rptr. 540].)

■ We disagree with the *Shapiro* court's suggestion that the Legislature is the only source of public policy determinations. (See *Garcia* v. *Rockwell International Corp.* (1986) 187 Cal.App.3d 1556, 1561 [232 Cal.Rptr. 490]; *Koehrer* v. *Superior Court, supra,* 181 Cal.App.3d at p. 1165.) ■ However, we need not base our decision on that distinction since in this case there is statutory support for plaintiff's assertion her discharge violated a substantial public policy principle, There is no question California has a public policy favoring qualified care for its ill and infirm. The list of sections in the Business and Professions Code dealing with safeguards for the health of patients is lengthy. (§§ 1000 et seq., chiropractors; 1200 et seq., clinical laboratory technology; 1600 et seq., dentistry; 2000 et seq., medicine; 2700 et seq., nursing, etc.) The legislation recognizes each particular practice affects the public health, safety and welfare and as such requires regulation and control.

Although the "Respiratory Care Practice Act" (Bus. & Prof. Code, § 3700 et seq.) was not operative until July 1, 1983, two months after plaintiff was dismissed, it was nonetheless to be foreseen in light of the myriad controls on all other branches of the healing arts. Section 3701 of the act provides:

"The Legislature finds and declares that the practice of respiratory care in California affects the public health, safety, and welfare and is to be subject to regulation and control in the public interest to protect the public from the unauthorized and unqualified practice of respiratory care and from unprofessional conduct by persons certified to practice respiratory care. . . ."

The act not only reiterates the *general* California concern for patients, but specifically addresses the need to regulate and control those who deal in respiratory care. But we need not look to the Respiratory Care Practice Act alone. We find support for our decision in general societal concerns for qualified patient care. This policy militates against allowing an employer to discriminate against or discharge an employee for voicing dissatisfaction with procedures he or she reasonably believes might endanger the health, safety and welfare of the patients for which the employee is responsible. (See *Greene v. Hawaiian Dredging Co.* (1945) 26 Cal.2d 245, 251 [157 P.2d 367]; *Hentzel v. Singer Co., supra,* 138 Cal.App.3d at p. 298.)

Our dissenting colleague would make an exception to the rule we enunciate here. In her view, when an employee protests by refusing to work, then the employee must point to a violation by the employer of a specific statutory enactment or rule. Reliance is placed on provisions of California's Occupational Safety and Health Act (OSHA), in particular on the juxtaposition of Labor Code sections 6310 and 6311. Section 6310 prohibits discharge or discrimination against an employee who *complains* to the Division of Occupational Safety and Health or his employer regarding unsafe working conditions. Section 6311 prohibits discharge or discrimination against an employee for "*refusing to perform work* in the performance of which this code, including Section 6400, any occupational safety or health standard or any safety order of the division or standards board will be violated, where the violation would create a real and apparent hazard to the employee or his or her fellow employees. . . ." (Italics added.)

The provisions of OSHA are inapplicable here. The common law action for wrongful or tortious discharge is not dependent on nor a creature of the Labor Code. In addition, plaintiff in this case alleged she was protesting conditions which endangered *patient* health and safety, not employee health and safety. Under the circumstances, we see no reason for engrafting an inapplicable provision from OSHA onto the common law cause of action for wrongful discharge.

Further, we find the dissent's insistence that plaintiff stay on the job and merely lodge a complaint to be unrealistic. Such an untenable rule may well expose plaintiff to civil and perhaps even criminal liability by continuing to work under conditions she believed endangered her patients.

We reiterate our task here is only to determine whether plaintiff has alleged a cause of action. In making that determination we must accept the allegations of plaintiff's complaint as facts without regard to her ability to prove them. Plaintiff has alleged she was discharged in retaliation because she refused to work under conditions she believed endangered the health and safety of patients under her care and, as such, she was discharged in violation of fundamental public policy considerations. We hold only that plaintiff's allegations were sufficient to state a cause of action and she was not required to point to violation of a specific statute by her employer.

The judgment is reversed.

Crosby, J., concurred.

**SONENSHINE, J.**—I respectfully dissent. I concur with the majority's general conclusion. An employee alleging retaliatory discharge, *based on violation of public policy*, need not claim and prove termination resulted from asserting rights embodied in statutes or regulations rather than in a more general public policy. However, I cannot find that general proposition is applicable here for reasons discussed, *post*.

The plaintiff alleged she was dismissed "when [she] advised [her supervisor] that she could not work in the respiratory care department as the only experienced therapist when customarily there were three experienced therapists to service the patients on the subject 'P.M.' shift. In fact [she] protested her assignment to work under these conditions because the health, safety and physical well-being of the patients would thereby have been placed in jeopardy. [She] accordingly alleges that her termination was retaliatory in nature for her *refusal to continue working* in conditions that would have endangered patient safety and health and accordingly violate fundamental public policy of the State of California." (Italics added.)

In *Hentzel* v. *Singer Co.* (1982) 138 Cal.App.3d 290 [188 Cal.Rptr. 159], the appellate court held the plaintiff's complaint was sufficient to state a cause of action for wrongful termination. Hentzel alleged, as a result of his efforts to obtain a smoke-free environment, he had been harassed and eventually fired.

The court recognized the question was "not whether [the employer] acted unlawfully by failing to accede to [the employee's] protests, but whether it 'violated an express statutory objective or undermined a firmly established principle of public policy' by discharging [the employee] for making them." (*Id.,* at pp. 295-296, fn. omitted.) The court had no difficulty in finding authority upon which the plaintiff could rely. The court pointed to Labor

Code sections 923 and 6400 et seq. The major issue in *Hentzel,* however, was whether the plaintiff's common law cause of action for retaliatory discharge survived the statutory remedies now provided in Labor Code section 6300 et seq. The court noted it did.

The *Hentzel* plaintiff could as well have proceeded under the Labor Code. The court noted Labor Code section 6310 forbids retaliatory discharge for lodging a complaint with a division of California's Occupational Safety and Health Act (OSHA) or the employer concerning employee safety. The section specifically applies to "any oral or written complaint ... with reference to employee safety or health." Thus, "an employee is protected against discharge or discrimination for complaining in good faith about working conditions or practices which he [or she] reasonably believes to be unsafe, *whether or not there exists at the time of the complaint [a] standard or order which is being violated.*" (*Id.,* at pp. 299-300, fn. omitted, italics added.)

But our facts are distinguishable. Our plaintiff did more than lodge a complaint; she walked off the job. OSHA specifically addresses, in Labor Code section 6311, the separate and distinct activity of discharge for refusal to work or discharge for refusal to perform certain assignments. Section 6311 "protects the more drastic conduct of refusing to work *only* where some 'occupational safety or health standard or any safety order of the division or standards board will be violated ....' " (*Id.,* at p. 299.)

By analogy, if Dabbs had been fired, while working, because of her subjective concerns for the patients, she could state a cause of action for wrongful termination. She need *not* allege violation of a specific statute, standard or regulation to avoid dismissal at the pleading stage. However, *she* initiated her absence from the job by refusing to work. Therefore, she must allege a particular violation, and this she has not done.

I would conclude this result is in accord with the statutory references discussed *ante,* supported by sound public policy. When a concerned employee, under these circumstances appropriately complains to the employer, notice has been given and changes can be made. But when an employee simply removes herself, she has left the employer in an untenable position. There are no rules for the employer to follow: the employer is forced to accede to the personal demands of the employee or face a wrongful termination suit.[1] Therefore, an employee who refuses to work must be able to point to a specific regulation or similar enactment. It is one thing to emphasize an employee's subjective motives when the employee has been uncere-

---

[1] The folly of this dilemma can be demonstrated by our facts. What did the plaintiff, when she complained to her supervisor, expect him to do? Fire, on the spot, her allegedly unqualified coworker? That action would result in even less patient care.

moniously removed from a position, and the right to remuneration severed, by the employer. It is quite another to allow subjective criteria as the basis for damages for wrongful termination when it is the *employee's* decision to interrupt the work flow and refuse to continue on the shift. Here, the unemployment is voluntary.

I would therefore find the trial court's ruling is correct, albeit for the wrong reason. To the extent the lower court's ruling may be interpreted to bar *any* action for wrongful termination based on public policy undefined by a specific statute, the holding is incorrect. The complaint must be examined in accord with a two-fold approach. Thus, a cause of action is stated if there is any allegation suggesting the plaintiff was terminated, *while still attending to her duties*, for voicing her concerns over the qualifications of therapists assigned to work with her. This would be true even though there are (or were) no specific regulations to which she could refer.

However, the plaintiff desired to protest subjectively objectionable conditions by *voluntarily ceasing to continue her assigned duties*. She must therefore rely on specific enactments in her action for damages for termination. As discussed *ante*, my conclusion comports with comparable methods for protection of the employee's employment position if voicing complaints concerning his or her own health, welfare and safety. (Lab. Code, § 6300 et seq.) Concern for patient health, safety and welfare is deserving of at least equal protection. It is *not,* however, entitled to considerably more protection.

The complaint, reinforced by the plaintiff's deposition, does not allege involuntary removal from her appointed shift. She left voluntarily. Therefore, her reliance upon "general" public policy concerns for patient care can only relate to termination after she refused to continue on the shift. In this instance, as noted above, it is not the absence of a good faith belief on her part that precludes her cause of action. It is the absence of a specific enactment violated by the employer.

A petition for a rehearing was denied February 24, 1987, and respondents' petition for review by the Supreme Court was denied April 24, 1987.