Desmond, J.
We see nothing illegal about this arbitration award and no reason for vacating it. Petitioner was for years appellant’s president and in charge of its production and engineering and one of its directors and largest stockholders. In 1954 appellant entered into an 11-year contract employing petitioner as manager in charge of production and engineering at a large salary plus a percentage of net profits. Included was *163 a covenant that, if petitioner should be declared permanently disabled, he would receive reduced compensation for the next three years and then the contract would end. The contract provided that any controversy arising out of it should be settled by arbitration in accordance with American Arbitration Association rules and the rules of that Association in so many words authorized an arbitrator to grant equitable relief including “ specific performance of a contract
In June, 1956 the corporation’s directors made a determination that appellant was permanently disabled and that his services should be terminated. Petitioner disputed the finding of permanent disability. The resulting difference of opinion was just such a controversy as the parties had agreed to submit to arbitration and to arbitration it went. The arbitrators held in favor of petitioner on the issue and ordered petitioner’s reinstatement. That, of course, put beyond reach of the courts the question thus conclusively determined by arbitration as to whether petitioner was in fact permanently disabled. It is now asserted, however, that it is against public policy to compel a corporation to continue the services of an officer whose services are unsatisfactory to the directors. But we must remember that this corporation made a valid long-term employment contract with this man and agreed that any disputes would go to arbitrators who would be empowered to order specific performance. Since the contract was indisputably valid, so is the arbitration award. The power of an arbitrator to order specific performance in an appropriate case has been recognized from early times (see Justice Story in McNeil v. Magee, Fed. Cas. No. 8915 [1829]).
In Matter of Ruppert (Egelhofer) (3 N Y 2d 576) we upheld the grant by arbitrators of an injunction against a strike in a labor dispute, and we cited a number of precedents therefor. A supposed “public policy” against such an injunction was urged on us in Buppert since there we had a specific statute (Civ. Prac. Act, § 876-a) which would have made it impossible for a court to grant that same injunction. However, we held in Buppert that the parties had agreed not only to submit their controversies to arbitration but had validly authorized the arbitrators to issue an injunction. The same is true here. Whether a court of equity could issue a specific performance *164 decree in a case like this (see Matter of Buffalo & Erie Ry. Co., 250 N. Y. 275, 280-281) is beside the point. There is no controlling public policy which voids an arbitration agreement like this one and the courts are not licensed to announce a new public policy to fit the supposed necessities of the case (see Matter of Rhinelander, 290 N. Y. 31, 36).
The judgment should be affirmed, with costs.