Gabrielli, J.
(dissenting). Although espousing a desire to obviate a "trap for the unwary” and a "Shylock principle of doing business without a Portia-like escape” (p 359), the majority reaches a result favoring a guileful defendant and voids a just and rational award of punitive damages to a wholly innocent and deserving plaintiff. Stripped to its essence the defendant, by willful and fraudulent guises, refused to pay plaintiff royalties known to be due and owing to her; forced her to commence actions claiming fraudulent acts and to enforce arbitration to redress the wrongs done to her and to *361 collect the sums rightfully due; and, finally, defendant waived any objection to the claim for punitive damages, deliberately refused to participate in the arbitration hearing and abruptly left the hearing without moving against the claim for punitive damages or even so much as offering any countervailing evidence or argument on the merits of plaintiff’s claims. I cannot, therefore, join with the majority and conclude, as they now do, that the ultimate limit of the damages awardable to plaintiff is that sum which was unquestionably due and owing to her in any event under the royalty agreement.
The basic issue presented for our determination is whether, in an arbitration proceeding brought pursuant to a contract containing a broad arbitration clause, an award of punitive damages is violative of public policy.
Plaintiff, the author of The Sensuous Woman and The Sensuous Man, entered into agreements with the defendant to publish the two books. The agreements contained identical, broad arbitration clauses which provide:
"Any controversy or claim arising out of this agreement or the breach or interpretation thereof shall be determined by arbitration in accordance with the rules then obtaining of the American Arbitration Association, and judgment upon the award may be entered in the highest court of the forum, State or Federal, having jurisdiction.”
A dispute arose between the parties and in December, 1971 plaintiff commenced an action for damages against defendant alleging that defendant and its principal officer, Lyle Stuart, committed fraud in inducing her to enter into the agreements, substantially underpaid her royalties then due, and engaged in nefarious business activities calculated to harass and annoy her. Defendant moved for a stay of the action pending arbitration. The decision on the motion has been held in abeyance pending trial of the fraudulent inducement issue, which as yet has not been held due to protracted pretrial discovery proceedings.
In March, 1974 plaintiff commenced a new and separate action asserting that defendant had wrongfully withheld an additional $45,000 in royalties during the first half of 1973. Defendant obtained a stay of that action pending arbitration and plaintiff subsequently served a demand for arbitration. The demand restated the claim made in the March, 1974 complaint and also contained an additional claim for punitive damages allegedly resulting from defendant’s maliciously *362 withholding royalties due plaintiff who charged that it was done for the unjustifiable and vindictive purpose of coercing plaintiff to withdraw the pending 1971 action.
Defendant participated in the selection of the arbitrators and appeared at the hearing. Represented by counsel and two corporate officers, defendant promptly entered objections concerning the standing of plaintiff to bring the proceeding and certain administrative matters. No objection was addressed to the demand for punitive damages. The objections were overruled, and defendant’s representatives walked out of the hearing and refused to participate any further in the arbitration proceeding. None of the objections raised at the hearing have ever been renewed.
Following the departure of defendant’s officers and counsel, the arbitrators heard extensive and, of course, unchallenged evidence from plaintiff. As a result, the arbitrators awarded plaintiff $45,000 on her claim for royalties and $7,500 in punitive damages plus interest and fees. When plaintiff moved to confirm the award, defendant objected, for the first time, that an award of punitive damages is violative of public policy and beyond the scope of the authority of the arbitrators. Special Term confirmed the award and the Appellate Division upheld that determination. I would affirm.
In doing so, I would reject the notion that this award of punitive damages is violative of public policy. We have only recently treated with a somewhat similar argument in Matter of Associated Gen. Contrs., N. Y. State Chapter (Savin Bros.) (36 NY2d 957). There we considered the effect of a public policy argument against penalty awards with respect to an arbitration commenced by a national trade association in the construction industry against one of its employer-members pursuant to the provisions of a broad arbitration clause contained in the association agreement. Specifically at issue was whether an arbitration award of treble liquidated damages, assessed in accordance with the express terms of the agreement, was enforceable.* We held that since the arbitration *363 was in consequence of a broad arbitration clause and concerned no third-party interests which could be said to transcend the concerns of the parties to the arbitration, there was present (p 959) "no question involving public policy of such magnitude as to call for judicial intrusion” (see, also, Matter of Riccardi [Modern Silver Linen Supply Co.], 36 NY2d 945; cf. Hirsch v Hirsch, 37 NY2d 312). The Associated Gen. Contrs. case may be contrasted with Matter of Aimcee Wholesale Corp. (Tomar Prods.) (21 NY2d 621) where the issue to be arbitrated concerned the enforcement of State antitrust law, a matter which was, as we said in Aetna Life & Cas. Co. v Stekardis (34 NY2d 182, 186, n), "of overriding public policy significance such as to call for judicial intervention dehors the provisions of CPLR 7503”. Other policies, "especially those embodied in statutory form” (Matter of Aimcee, supra, at p 629), have also been accorded similar significance (see Matter of Knickerbocker Agency [Holz] 4 NY2d 245 [liquidation of defunct insurance companies]; Durst v Abrash, 17 NY2d 445 [usury law]; Wilko v Swan, 346 US 427 [Securities Act of 1933 violation]; American Safety Equip. Corp. v Maguire Co., 391 F2d 821 [Federal antitrust law]).
The case at bar falls within the rationale and rule of the Associated Gen. Contrs. case. Controlling here, as there, is the fact that the arbitration clause is broad indeed; there are no third-party interests involved; and the public policy against punitive damages is not so commanding that the Legislature has found it necessary to embody that policy into law, espedaily one that would apply to all cases involving such damages irrespective of the amount sought, the relative size of the award, or the punishable actions of the parties. Or, put another way, the public policy which "favors the peaceful resolutions of disputes through arbitration” (Associated Gen. Contrs., supra, at p 959) outweighs the public policy disfavoring the assessment of punitive damages in this instance, where the unjustifiable conduct complained of is found to be with malice. I would conclude, therefore, that any public policy limiting punitive damage awards does not rise to that level of significance in this case as to require judicial intervention.
The majority would distinguish the Associated Gen. Contrs. case (supra) upon the thin ground that the enforcement of a treble liquidated damages clause which was applicable to numerous nationwide contracts that conceivably could have *364 amounted to astronomical sums is not the equivalent of the enforcement of an award of penalty damages. However, as Mr. Justice Greenblott specifically stated for the majority below in that case, and in an opinion expressly approved by this court, the amount of damages therein computed in the arbitration bore "no reasonable relationship to the amount of damages which may be sustained” (emphasis added; 45 AD2d 136, 140); and a contract clause which is grossly disproportionate to the presumable damage or readily ascertainable loss is a penalty clause, irrespective of its label (Equitable Lbr. Corp. v IPA Land Development Corp., 38 NY2d 516, 521-522; Ward v Hudson Riv. Bldg. Co., 125 NY 230, 235; see Wirth & Hamid Fair Booking v Wirth, 265 NY 214; Uniform Commercial Code, § 2-718, subd [1]; Restatement, Contracts, § 339; 3 Williston, Contracts [rev ed], § 779). In short, Associated Gen. Contrs. is not only apposite but is controlling. Conversely, Matter of Publishers’ Assn. of N. Y. City (Newspaper Union) (280 App Div 500, 504-506), decided in 1951, and a predicate for the majority holding, has been seriously questioned and said to be of "doubtful validity” (8 Weinstein-Korn-Miller, NY Civ Prac, par 7510.07) due to the subsequent enactment of CPLR 7501 which intentionally broadened the scope of arbitration and made awards therein enforceable "without regard to the justiciable character of the controversy”. Even the court which authored Publishers’ Assn, now agrees that the issue there considered was not properly framed (see Associated Gen. Contrs., 45 AD2d, at p 142, supra).
An affirmance here would do no violence to precedents in this court. In at least two varied circumstances we have held that although public policy would bar a civil suit for relief, that same public policy was not of such overriding import as to preclude confirmation of an arbitration award (Matter of Staklinski [Pyramid Elec. Co.], 6 NY2d 159; Matter of Ruppert [Egelhofer], 3 NY2d 576). In Ruppert was permitted the enjoining of a work stoppage in a labor dispute by arbitration despite the fact that the issuance of such relief by a court was prohbited by statute (then Civil Practice Act, § 876-a). Similarly, in Staklinski, citing Ruppert, we upheld an arbitration award of specific performance of an employment contract in the face of the public policy against compelling a corporation to continue the services of an officer whose services were unsatisfactory to the board of directors. The rule to be dis *365 tilled from these cases, therefore, is that only where the public interest clearly supersedes the concerns of the parties should courts intervene and assert exclusive dominion over disputes in arbitration (see Comment, Judicial Review of Arbitration: Role of Public Policy, 58 Nw U L Rev 545, 554-555; see, also, McLaughlin, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 7501, Supp, p 164; Note, 52 Col L Rev 943, 945).
Nor can we hold, as defendant also urges, that the arbitrators exceeded their authority in awarding punitive damages to plaintiff. Arbitrators are entitled to "do justice. It has been said that, short of 'complete irrationality’, 'they may fashion the law to fit the facts before them’ ” (Lentine v Fundaro, 29 NY2d 382, 386, quoting Matter of National Cash Register Co. [Wilson], 8 NY2d 377, 383, and Matter of Exercycle Corp. [Maratta] 9 NY2d 329, 336; see, also, Matter of Spectrum Fabrics Corp. [Main St. Fashions], 309 NY 709, affg 285 App Div 710). The award made here was neither irrational nor unjust. Indeed, defendant has not denied that its actions were designed to harass and intimidate plaintiff, as she claimed and the arbitrators obviously concluded. Hence, the award was within the power vested in the arbitrator.
As we have noted, plaintiff sought punitive damages as listed and set forth in the demand for arbitration, presenting of course a threshold question to which defendant failed to respond and, in fact, summarily refused to address himself. In effect, therefore, defendant’s failure to act, respond or contest the claim is tantamount to a waiver of any objection thereto and, indeed, is equivalent to an agreement to arbitrate the allegation now complained of.
Accordingly, the order of the Appellate Division should be affirmed.
Judges Jasen, Fuchsberg and Cooke concur with Chief Judge Breitel; Judge Gabrielli dissents and votes to affirm in a separate opinion in which Judges Jones and Wachtler concur.
Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.

 The agreement provided that where an arbitrator found that a member had violated the terms of the agreement, damages were to be awarded " 'in an amount no less than three (3) times the daily liquidated damage amount provided for in each * * * heavy and highway construction contract to which the undersigned firm is a party within the geographic area of the applicable labor contract * * * for each * * * day the firm complained of is found by the arbitrator to have been in violation of its obligations’ ” (Matter of Associated Gen. Contrs., supra, p 958).