[Civ. No. 52501. First Dist., Div. Two. Dec. 20, 1982.]

PAUL HENTZEL, Plaintiff and Appellant, v.
SINGER COMPANY, Defendant and Respondent.

COUNSEL

John W. Clark and Trepel, Clark & Manley, Trepel, Clark, Clark, Baron & Korda for Plaintiff and Appellant.

John Rea as Amicus Curiae on behalf of Plaintiff and Appellant.

Peggy L. Braden and William O'Dea for Defendant and Respondent.

OPINION

GRODIN, P. J.—Appellant Paul Hentzel brought this action against his former employer, the Singer Company (Singer), claiming, on the basis of various theories, that his termination from employment was wrongful and in addition that his employer was guilty of the tort of intentional infliction of emotional distress. The gist of his complaint is that his employer discriminated against him, and eventually terminated him, in retaliation for his protesting what he considered to be hazardous working conditions caused by other employees smoking in the workplace. He appeals from a judgment dismissing his complaint, after rulings sustaining Singer's demurrer to each of his causes of action without leave to amend.

In his original complaint, Hentzel alleged four causes of action: the first, in tort, for wrongful dismissal in retaliation "for his attempts to obtain a reasonably smoke-free environment in which to work"; the second, in contract, for breach of an implied promise that he would not be terminated so long as the services he performed were satisfactory; the third, on a theory of estoppel based upon the alleged promise; and the fourth, for intentional infliction of emotional distress. The trial court sustained general demurrers to the first and fourth causes of action without leave to amend. Hentzel then filed a first amended complaint containing five causes of action, as to each of which the trial court sustained Singer's demurrer.

We first summarize the allegations of the complaint which, for purposes of this appeal, we must accept as true. In his first cause of action, for "tortious wrongful discharge," Hentzel alleges that he was hired by Singer as a senior patent attorney at its APO-Link Division in Sunnyvale in 1974; that he was terminated in the latter part of 1979; that he performed all of his duties in an exemplary fashion; and that the proximate cause of his termination was his "attempt to obtain a reasonably smoke-free environment." The complaint goes on to allege that although Singer was aware of Hentzel's desire for a reasonably smoke-free environment, it refused to provide him with such, instead placing him in a working area with a heavier concentration of smoke than his original

work area, failed to segregate conference rooms into smoking and nonsmoking areas, and failed to prevent other employees from "directly antagonizing" him in various ways, which included sitting next to him and smoking, and excluding him from meetings to which he would normally have been invited because he reasonably requested division of the room into smoking and nonsmoking areas. The complaint further alleges that the presence of cigarette smoke in closed environments creates a significant health hazard to those who are present in the environment.

In his second cause of action, for "breach of contract," Hentzel reincorporates all of the allegations of his first cause of action, and asserts that by the conduct alleged Singer "breached the implied covenant of good faith and fair dealing which existed in the employment contract relationship between Plaintiff and Defendants."

Hentzel's third cause of action, based upon the same allegations as the second but entitled "tortious wrongful discharge," asserts that Singer's conduct was "willful, malicious, oppressive and reckless in regard to Plaintiff's rights," and asks that punitive damages be assessed.

His fourth cause of action, for "breach of contract," again incorporates the allegations contained in his first cause of action, and alleges further that during the course of his employment, "Defendants implied that Plaintiff would not be terminated so long as the services he performed were satisfactory"; that he continued in employment with defendants because he reasonably believed this implication was true; that his job performance "was satisfactory and each year he received a superior rating for his job performance from his supervisor"; and that despite all this, he was terminated, to his monetary detriment. Hentzel's fifth cause of action is basically the same as the fourth, except that it seeks to assert an "estoppel," alleging that defendants were "aware that through their conduct they had led plaintiff to believe that he would only be terminated if his services were not satisfactory"; that plaintiff did so believe, and that he relied to his detriment on defendant's conduct by not seeking other employment. His cause of action for emotional distress in the original complaint alleged the facts now contained in his first cause of action, relating to aggravating conduct by Singer,[1] and asserted that defendant's conduct caused him "severe emotional

---

[1]The original complaint alleged: "In spite of knowing that Plaintiff needed as smoke-free an environment as possible to work in because of physical health problems, Defendants ignored Plaintiff's needs, placed Plaintiff in a working area with a heavier concentration of smoke than his original work area, failed to segregate conference rooms into smoking and non-smoking areas, failed to prevent other employees from directly antagonizing Plaintiff by sitting next to him and smoking, moving Plaintiff's office and telephone without telling him of the move, firing his patent law assistant without advising him, and excluding him from meetings to which he would normally have been invited because he reasonably requested division of the room into smoking and non-smoking areas, all of which conduct constituted outrageous conduct on the part of Defendants."

suffering . . . which resulted in high blood pressure . . . and the continued deterioration in health. . . ."

*Discussion*

### I.

 By the allegations contained in his first cause of action, Hentzel seeks to bring his case within the rule of *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]. In *Tameny* the Supreme Court acknowledged that under "the traditional common law rule, codified in Labor Code section 2922,[6] an employment contract of indefinite duration is in general terminable at 'the will' of either party," but observed: "Over the past several decades . . . judicial authorities in California and throughout the United States have established the rule that under both common law and the statute an employer does not enjoy an absolute or totally unfettered right to discharge even an at-will employee. In a series of cases arising out of a variety of factual settings in which a discharge clearly violated an express statutory objective or undermined a firmly established principle of public policy, courts have recognized that an employer's traditional broad authority to discharge an at-will employee 'may be limited by statute . . . or by considerations of public policy.' [Citations.]" (*Id.*, at p. 172.) Applying that rule, the court held that an employee allegedly terminated for refusing to perform a criminal act (in that case, participation in an illegal price-fixing scheme) could maintain a tort action for wrongful discharge against the employer. (*Id.*, at p. 178.)

Were it not for the provisions of the California Occupational Safety and Health Act of 1973, Labor Code section 6300 et seq. (hereafter OSHA), we would have little difficulty concluding that the complaint states a cognizable claim under the *Tameny* principle. Contrary to Singer's contention, the question is not whether Singer acted unlawfully by failing to accede to Hentzel's protests,[2] but whether it "violated an express statutory objective or undermined

[6]Section 2922 provides in relevant part: 'An employment, having no specified term, may be terminated at the will of either party on notice to the other . . . .' "

[2]OSHA defines the terms "safe," "safety," and "health" as applied to an employment or a place of employment as meaning "such freedom from danger to the life, safety, or health of employees as the nature of the employment reasonably permits." (Lab. Code, § 6306.) The Occupational Safety and Health Standards Board, within the Department of Industrial Relations, has authority to adopt safety and health standards and orders (Lab. Code, § 142.3); and, where existing standards or orders are inadequate, the chief may write a "special order" to correct an unsafe condition, device, or place of employment. (Lab. Code, § 6305, subd. (b).) It does not appear that there exist any standards or orders applicable to tobacco smoke in working environments such as Hentzel's, nor that there exists any special order applicable to his workplace.

We note that there is a developing body of law in other jurisdictions which recognizes an

a firmly established principle of public policy" by discharging Hentzel for making them.

California has long maintained a policy of protecting the right of employees to voice their dissatisfaction with working conditions. Labor Code section 923,[3] adopted in 1937, declares generally the right of employees to designate representatives and engage in concerted activities " 'for the purpose of collective bargaining or other mutual aid or protection,' " and while "attempts to bargain on behalf of a single employee . . . seem . . . to be the antithesis of the strength in numbers philosophy which the statute seeks to encourage and to protect," it has nevertheless been held that section 923 (in the absence of any union) gives rise by implication to certain rights on the part of individual employees, among them "the right to designate an attorney or other individual to represent him in negotiating terms and conditions of his employment [so] that his discharge for so doing constitutes a violation of Labor Code section 923." (*Montalvo* v. *Zamora* (1970) 7 Cal.App.3d 69, 75 [86 Cal.Rptr. 401].)[4]

---

obligation on the part of an employer under some circumstances to protect employees from health hazards which may be posed by cigarette smoking. A New Jersey court, relying on the common law obligation of an employer to furnish a safe workplace, has stated: "The portion of the population which is especially sensitive to cigarette smoke is so significant that it is reasonable to expect an employer to foresee health consequences and to impose upon him a duty to abate the hazard which causes the discomfort." (*Shimp* v. *New Jersey Bell Telephone Company* (1976) 145 N.J.Super. 516, 529-530 [368 A.2d 408, 415-416]; *Parodi* v. *Merit Systems Protection Bd.* (9th Cir. 1982) 690 F.2d 731; *Vickers* v. *Veterans Adm.* (W.D.Wash. 1982) 29 F.E.P. Cases 1197, 30 E.P.D. ¶¶ 27, 352; see, Blackburn, *Legal Aspects of Smoking in the Workplace* (1980) 31 Labor L.J. 564; Axel-Lute, *Legislation Against Smoking Pollution* (1978) 6 Environmental Affairs 301.)

[3]Labor Code section 923 provides: "In the interpretation and application of this chapter, the public policy of this State is declared as follows: [¶] Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employees. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers, the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

[4]The National Labor Relations Act (29 U.S.C. § 151 et seq.), by contrast, protects only concerted activity (see 29 U.S.C. §§ 157, 158(a)(1)). It has been held that "in order to prove a concerted activity under . . . the Act, it is necessary to demonstrate that the activity was for the purpose of inducing or preparing for group action to correct a grievance or a complaint." (*Indiana Gear Works* v. *N. L. R. B.* (7th Cir. 1967) 371 F.2d 273, 276; accord *Pioneer Natural Gas Co.* v. *N. L. R. B.* (5th Cir. 1981) 662 F.2d 408, 418; *N. L. R. B.* v. *Lloyd A. Fry Roofing Co., Inc. of Del.* (6th Cir. 1981) 651 F.2d 442, 445; *Aro, Inc.* v. *N. L. R. B.* (6th Cir. 1979) 596 F.2d 713, 718; *N. L. R. B.* v. *Buddies Supermarkets, Inc.* (5th Cir. 1973) 481 F.2d 714, 717.) And while the actions of an individual employee to enlist the support of other employees for the purpose of improving working conditions may be as "concerted" as group activities to the same end (see *Dreis & Krump Mfg. Co., Inc.* v. *N. L. R. B.* (7th Cir. 1976) 544 F.2d 320, 328), the "public venting of a personal grievance, even a grievance shared by others, is not a concerted

Nearly 40 years ago, the Supreme Court in *Greene* v. *Hawaiian Dredging Co.* (1945) 26 Cal.2d 245 [157 P.2d 367], held that protest of working conditions by an individual employee could not justify termination under a contract permitting termination "[i]f for cause the services of the Employee are not satisfactory to the Employer . . . ." (*Id.,* at p. 246.) The court declared: "The days when a servant was practically the slave of his master have long since passed. In order that the dignity of the employer-employee relation be maintained and that present-day fundamental social concepts be preserved, the employee has the right without breaching his implied obligations to his employer to protest regarding working conditions and rules of his employer and request that they be altered. . . . Broadly viewed, such conduct is beneficial rather than detrimental to the employer's interests. It tends to improve the morale of the employee, ultimately resulting in the exhibition of greater diligence and fidelity on his part. The wisdom and importance of the right to petition is not new. The right of the governed to petition those exercising the powers of government is secured by the Constitutions of the United States and this state. (U.S. Const., First Amend.; Cal. Const., art. I, § 10.) The obligations of the employee in the instant case are those implied in law because considered wise policy. That policy must be applied in the light of the policy insuring the right to petition." (*Id.,* at p. 251.)

There might be some question whether these authorities, standing alone, would be sufficient to sustain Hentzel's complaint. While the court in *Montalvo* spoke of section 923 as giving rise to rights on the part of individual employees, the opinion reveals that in fact several employees banded together in designating an attorney to represent them. And the issue in *Greene* arose in the context of a contractual provision expressly referring to "cause," rather than in the context of a suit in contract for discharge in contravention of public policy. We are mindful of the restraint which courts must exercise in this arena, lest they mistake their own predilections for public policy which deserves recognition at law.

In the case of protests against unsafe working conditions, however, these authorities do not stand alone—and did not, even before the passage of OSHA. The safety of employees in the work place has long been a matter of prime legislative concern. Labor Code section 6400 provides: "Every employer shall furnish employment and a place of employment which are safe and healthful for the employees therein." Section 6401 provides: "Every employer . . . shall adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe

---

activity." (*Pelton Casteel, Inc.* v. *N. L. R. B.* (7th Cir. 1980) 627 F.2d 23, 28; accord *Indiana Gear Works* v. *N. L. R. B., supra,* 371 F.2d 273; *Mushroom Transportation Company* v. *N. L. R. B.* (3rd Cir. 1964) 330 F.2d 683, 685.) Thus, we are not confronted in this case with any problem of federal preemption.

and healthful. Every employer shall do every other thing reasonably necessary to protect the life, safety, and health of employees." Section 6402 provides: "No employer shall require, or permit any employee to go or be in any employment or place of employment which is not safe and healthful." Section 6403 provides in part: "No employer shall fail or neglect: . . . [¶] (c) To do every other thing reasonably necessary to protect the life, safety, and health of employees." And Section 6404 provides: "No employer shall occupy or maintain any place of employment that is not safe and healthful." These provisions derive from a statute adopted in 1917. (Stats. 1917, ch. 586, § 34, p. 862.)

It requires little analysis to perceive that the legislative purpose underlying these provisions would be substantially undermined if employers were permitted to discharge employees simply for protesting working conditions which they reasonably believe constitute a hazard to their own health or safety, or the health or safety of others. Achievement of the statutory objective—a safe and healthy working environment for all employees—requires that employees be free to call their employer's attention to such conditions, so that the employer can be made aware of their existence, and given opportunity to correct them if correction is needed. The public policy thus implicated extends beyond the question of fairness to the particular employee; it concerns protection of employees against retaliatory dismissal for conduct which, in light of the statutes, deserves to be encouraged, rather than inhibited. In that respect, the policy at stake is similar to that which informed the court's decision in *Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184 [344 P.2d 25], which held that the state's policy of encouraging truthful testimony before legislative bodies would be undermined if an employer could terminate an employee for refusing to commit perjury.

Hentzel's problem, ironically, is that the Legislature has now *expressly* confirmed the protected status of certain activity on the part of employees in relation to safety and health matters, by prohibiting discharge or discrimination because of such activity (§ 6310, subd. (a)), by declaring victims of discharge or discrimination to be entitled to reinstatement and reimbursement for lost wages and work benefits (§ 6310, subd. (b)), and by providing for the maintenance of suit by the Labor Commissioner on behalf of victims under certain circumstances (§ 6312).[5]

---

[5]Labor Code section 6310 provides: "(a) No person shall discharge or in any manner discriminate against any employee because such employee has either (1) made any oral or written complaint, to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his employer, or his representatives, or (2) instituted or caused to be instituted any proceeding under or relating to his rights or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any rights afforded him. [¶] (b) Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of such employment by his employer because such employee has made a bona fide oral or written complaint to the division, other governmental

It seems clear that Hentzel's allegations bring him within the scope of protection of section 6310. Initially, that section was interpreted as limiting protection to complaints made by employees to the Division of Labor Law Enforcement (*Division of Labor Law Enforcement* v. *Sampson* (1976) 64 Cal.App.3d 893 [135 Cal.Rptr. 23]), but following that decision the Legislature amended section 6310 expressly to cover complaints made to the division, and "other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, *his employer,* or his representative . . . ." (Stats. 1977, ch. 460, § 1, p. 1515, italics added.) And, unlike section 6311, which protects the more drastic conduct of refusing to work only where some "occupational safety or health standard or any safety order of the division of standards board will be violated,"[6] section 6310, subdivision (b) applies to "any oral or written complaint . . . with reference to employee safety or health." ■ We take this to mean that an employee is protected against discharge or discrimination for complaining in good faith about working conditions or practices which he reasonably believes to be unsafe, whether or not

agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his employer or his representative, of unsafe working conditions, or work practices, in his employment or place of employment shall be entitled to reinstatment and reimbursement for lost wages and work benefits caused by such acts of the employer. Any employer who willfully refuses to rehire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for such rehiring or promotion by a grievance procedure, arbitration, or hearing authorized by law, is guilty of a misdemeanor."

Labor Code section 6312 provides: "Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of Section 6310 or 6311 may, within 30 days after the occurrence of the violation, file a complaint with the Labor Commissioner alleging the discrimination. Upon receipt of the complaint, the Division of Labor Standards Enforcement shall cause such investigation to be made as it deems appropriate. If upon investigation it determines that the provisions of Section 6310 or 6311 have been violated, it shall bring an action in any appropriate court against the person who committed the violation. In any such action the courts shall have jurisdiction, for cause shown, to restrain violations of Section 6310 or 6311 and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay. [¶] Within 30 days of the receipt of a complaint pursuant to this section, the Division of Labor Standards Enforcement shall review the facts of the employee's complaint, set a hearing date or notify the employee and the employer of its decision, and, where necessary, begin the appropriate court action to enforce such decision."

[6]Labor Code section 6311 provides: "No employee shall be laid off or discharged for refusing to perform work in the performance of which this code, any occupational safety or health standard or any safety order of the division or standards board will be violated, where such violation would create a real and apparent hazard to the employee or his fellow employees. Any employee who is laid off or discharged in violation of this section or is otherwise not paid because he refused to perform work in the performance of which this code, any occupational safety or health standard or any safety order of the division or standards board will be violated and where such violation would create a real and apparent hazard to the employee or his fellow employees shall have a right of action for wages for the time such employee is without work as a result of such layoff or discharge; provided, that such employee notifies his employer of his intention to make such a claim within 10 days after being laid off or discharged and files a claim with the Labor Commissioner within 30 days after being laid off, or discharged or otherwise not paid in violation of this section."

there exists at the time of the complaint an OSHA standard or order which is being violated.[7]

It follows that the enforcement provisions of section 6312 were also available to Hentzel. If Hentzel had filed a complaint with the Labor Commissioner within 30 days after his dismissal, and the Division of Labor Standards Enforcement after investigation had determined that the dismissal violated section 6310, then the division would have been obligated to bring an action against Singer for "all appropriate relief including rehiring or reinstatement of [Hentzel] to his former position with back pay."

Question arises, therefore, as to the impact of these sections upon an employee's common law cause of action for retaliatory dismissal. Singer, citing judicial interpretation of the federal OSHA (29 U.S.C. § 651 et seq.), argues that Hentzel's rights are now limited to the filing of a complaint with the Labor Commissioner under section 6312. Hentzel, on the other hand, argues that his common law rights survive sections 6310 and 6312, and the Division of Labor Standards Enforcement has filed an amicus curiae brief in support of Hentzel's position. While the question is a difficult one, we conclude upon analysis that the position taken by Hentzel and the division is correct.

Section 6310, as it was originally enacted (Stats. 1973, ch. 993, § 59, p. 1930) was identical to section 11(c)(1) of federal OSHA (29 U.S.C. § 660(c)(1)), and section 6312 (Stats. 1973, ch. 993, § 63, pp. 1930-1931) was substantially identical to section 11(c)(2) (29 U.S.C. § 660(c)(2)), with the exception that under the federal statute it is the Secretary of Labor who is responsible for enforcement upon complaint. And, the analogous provisions of federal OSHA have been held not to give rise to a private cause of action, the enforcement procedure through the Secretary of Labor being deemed exclusive. (*Taylor* v. *Brighton Corp.* (6th Cir. 1980) 616 F.2d 256.) Singer urges we should follow this precedent, and hold that the enforcement provisions of CAL-OSHA are exclusive as well.

---

[7]The federal courts have reached a similar conclusion with respect to the prohibition against retaliation contained in title VII of the Civil Rights Act of 1964. (42 U.S.C. § 2000e et seq.) Section 704(a) of that Act prohibits retaliation in response to informal opposition to "any practice made an unlawful employment practice" by title VII. (42 U.S.C. § 2000e-3 (a).) Various circuits have held that a reasonable and good faith belief that the practice opposed is unlawful is sufficient to invoke the protection of section 704(a). (See *Monteiro* v. *Poole Silver Co.* (1st Cir. 1980) 615 F.2d 4, 8; *Berg* v. *LaCrosse Cooler Co.* (7th Cir. 1980) 612 F.2d 1041, 1045.) These decisions recognize that the initiative of aggrieved employees would be "severely chilled if they bore the risk of discharge whenever they were unable to establish conclusively the merits of their claims" (*Parker* v. *Baltimore & O. R. Co.* (D.C.Cir. 1981) 652 F.2d 1012, 1019) and that to hold otherwise "would tend to force employees to file formal charges rather than seek conciliation or informal adjustment of grievances." (*Sias* v. *City Demonstration Agency* (9th Cir. 1978) 588 F.2d 692, 695.)

There are several flaws in Singer's syllogism, the first and primary one being that the question before us is different from that which confronted the federal court in *Taylor*. *Taylor* decided that the federal OSHA did not *create* a private cause of action; here, we are called upon to decide whether the state OSHA *destroyed* a cause of action otherwise maintainable. ▮ "[W]here a new right,—one not existing at common law, is created by statute and a statutory remedy for the infringement thereof is provided, such remedy is exclusive of all others. [Citations.]" (*Orloff* v. *Los Angeles Turf Club* (1947) 30 Cal.2d 110, 112 [180 P.2d 321, 171 A.L.R. 913].) But, "[i]f a right was established at common law or by statute before the new statutory remedy was created, the statutory remedy is usually regarded as merely cumulative, and the older remedy may be pursued at the plaintiff's election. [Citations.]" (2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 8, p. 886.)

CAL-OSHA was adopted in response to an invitation under the federal act for states to assume responsibility for development and enforcement of occupational safety and health standards, pursuant to a plan approved by the Secretary of Labor. (29 U.S.C. § 667.) In order to gain such approval the state plan is required to adopt standards and means for their enforcement, "at least as effective" as those provided under the federal statute. (29 U.S.C. § 667(c)(2).) Sections 6310 and 6312, as originally adopted, were obviously designed to meet that threshold requirement. At the time of their adoption, at least a portion of the rights protected by section 6310—the right to testify without retaliation—had been judicially recognized. (*Petermann* v. *International Brotherhood of Teamsters, supra,* 174 Cal.App.2d 184.) That the state Legislature intended, by adopting those sections, to limit state causes of action or remedies seems highly unlikely.

The California statute, moreover, contains a provision—section 6310, subdivision (b)—which has no counterpart in the federal act. That section did not appear in the original statute; it was adopted the following year. (Stats. 1974, ch. 1284, § 9, p. 2782.) And, judging from its language and placement, section 6310, subdivision (b) lends further support to the inference that the Legislature did not intend the remedial procedures of section 6312 to be exclusive. The first sentence of that section declares that employees who have been the victims of prohibited retaliation "shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by such acts of the employer." Since section 6312 already provided that, in suits by the division, the courts "shall have jurisdiction . . . to . . . order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay," the section 6310, subdivision (b) language, if it is not redundant, must serve a different function. It is possible that the Legislature adopted the first sentence of section 6310 in order to make certain that courts, in considering relief under section 6312, would exercise their jurisdiction affirmatively to order reinstate-

ment with back pay, but that seems unlikely. There appears no reason to believe that courts would fail to grant such relief when authorized to do so, in light of the fact that such relief has become standard under labor law statutes,[8] and in any event section 6312 itself would seem a more likely place for an amendment directing the courts to exercise their jurisdiction in a particular manner in suits brought under that section. It seems more probable that section 6310, subdivision (b) was designed, in part, to assure the availability of such a remedy in private suits. (See Civ. Code, § 3390; Comment, *Arbitration: Grounds for Vacating Award: Specific Performance of Personal Services Contract* (1960) 7 UCLA L.Rev. 507; *Staklinski* v. *Pyramid Electric Company* (1959) 6 N.Y.2d 159 [188 N.Y.S.2d 541, 160 N.E.2d 78].)

Other parts of section 6310, subdivision (b) also cast doubt upon Singer's exclusivity theory. The language of that section is self contained; rather than making reference to section 6310, subdivision (a), it instead specifies independently the conduct which is prohibited. And, the second sentence makes it a misdemeanor for an employer willfully to refuse "to rehire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for such rehiring or promotion *by a grievance procedure, arbitration, or hearing authorized by law.*" (Italics added.) Obviously, that sentence contemplates that a grievance or arbitral tribunal might properly order reinstatement of an employee dismissed in retaliation for conduct of the sort protected under section 6310, subdivision (b). And, if the Legislature contemplated that the section 6312 procedure would be otherwise exclusive, it seems more likely that the second sentence of section 6310 would have referred specifically to that procedure, rather than more generally to a "hearing authorized by law."

■ Singer argues in the alternative that Hentzel's complaint based upon retaliatory dismissal was properly dismissed because he failed to exhaust the remedy available under section 6312. It relies, in support of that argument, upon a decision of the Second Circuit Court of Appeals in *McCarthy* v. *Bark Peking* (2d Cir. 1982) 676 F.2d 42, 46, cert. applied for July 9, 1982, Supreme Court Docket No. 82-53, in which the court declined to decide whether federal OSHA creates a private cause of action, holding that if such a cause of action does exist it could be invoked only after the filing of a timely complaint with the

---

[8]To remedy an unlawful discharge based upon racial, religious or sexual discrimination, Congress has authorized district courts to require reinstatement and award back pay. (Tit. VII, Civil Rights Act of 1964, § 706(g), as amended by 42 U.S.C. § 2000e-5; see *Edwards* v. *School Bd. of City of Norton, Va.* (4th Cir. 1981) 658 F.2d 951; *Sias* v. *City Demonstration Agency, supra,* 588 F.2d 692.) The "make whole" provision of title VII was expressly modeled on section 10(c) of the National Labor Relations Act (as amended 29 U.S.C. § 160(c)). (*Albemarle Paper Co.* v. *Moody* (1975) 422 U.S. 405, 419 [45 L.Ed.2d 280, 297, 95 S.Ct. 2362].) Section 10(c), of course, also provides for remedial orders requiring reinstatement and back pay. (*Id.*) "[U]nder statutory schemes, when reinstatement [as well as back pay] is not ordered in an employment discrimination case, the circumstances are scrutinized very carefully. [Citation.]" (*Sethy* v. *Alameda County Water Dist.* (9th Cir. 1976) 545 F.2d 1157, 1163.)

Secretary of Labor proved fruitless. This argument suffers, however, from a defect similar to that inherent in Singer's contention that the remedy under section 6312 is exclusive; Hentzel's complaint does not depend upon a private right of action implied by OSHA, but upon a right of action which existed independent of OSHA and which, we conclude, the Legislature did not intend to destroy. Where a statute creates a right that did not exist at common law, and provides a comprehensive system of administrative enforcement, a requirement that administrative remedies be exhausted may be implied. (*Flores* v. *Los Angeles Turf Club* (1961) 55 Cal.2d 736, 746-747 [13 Cal.Rptr. 201, 361 P.2d 921].) But, generally, "where a statutory remedy is provided for the enforcement of a preexisting *common-law* right, the newer statutory remedy will be considered only cumulative." (*Id.*, at p. 747, italics in original; see also, *Jewett* v. *City Transfer & Storage Co.* (1933) 128 Cal.App. 556, 559 [18 P.2d 351]; *Estate of Ward* (1932) 127 Cal.App. 347, 354 [15 P.2d 901]; cf. *Orloff* v. *Los Angeles Turf Club* (1951) 36 Cal.2d 734 [227 P.2d 449].) Section 6312 does not constitute a comprehensive system of administrative enforcement; indeed, it provides for no administrative remedy, other than the maintenance by an administrative agency of a lawsuit on behalf of the complaining employee.[9] We do not find in its provisions, or elsewhere in OSHA, an intent on the part of the Legislature to preclude an employee from suing on his own behalf. Moreover, unlike section 6311, which expressly conditions the right to relief upon notification to the employer within 10 days and the filing of a claim with the Labor Commissioner within 30 days, section 6312 contains no requirement

---

[9]The remedial scheme under section 6312 is distinguishable from that under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.), where exhaustion of remedies in a similar situation may well be required. (See *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 323-324, fn. 13 [171 Cal.Rptr. 917].) The latter statute provides a comprehensive scheme of administrative enforcement through the Department of Fair Employment and Housing, whose function is to investigate, conciliate, and seek redress of complained of discrimination, through confidential conference, conciliation, and persuasion; and, if that fails or seems inappropriate, through an accusation to be heard by the Fair Employment and Housing Commission, which has power itself to issue orders remedying the discrimination. (*Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 213 [185 Cal.Rptr. 270, 649 P.2d 912].) That statute explicitly provides that a person may sue under its provisions only if no accusation is issued within 150 days after the filing of the complaint, and after issuance of a right-to-sue letter. (*Id.*, at pp. 213-214.) It is also of some significance that the period of limitations for the filing of a complaint with the department is one year after the occurrence of the alleged unlawful practice (Gov. Code, § 12960), a substantially longer period than the 30 days allowed under section 6312.

The remedial scheme under section 6312 is similarly distinguishable from Labor Code section 132a, which prohibits discrimination against an employee for filing or making known his intention to file an application for benefits with the Workers' Compensation Appeals Board. Under that section, the appeals board is "vested with full power, authority, and jurisdiction to try and determine finally all the matters specified in this section subject only to judicial review." Emphasizing that language, and the general principle of exclusivity under the workers' compensation act, the court in *Portillo* v. *G. T. Price Products, Inc.* (1982) 131 Cal.App.3d 285 [182 Cal.Rptr. 291], held the statutory scheme of remedies to be exclusive. The statute in this case contains no comparable language and, as we have noted, does not provide a self-contained administrative remedy.

for exhaustion. ■ We conclude that Hentzel's complaint states a cause of action for retaliatory dismissal, and that his complaint is not foreclosed by the provisions of OSHA.

## II.

The remaining issues presented by the complaint and demurrer require less extensive discussion. Our holding with respect to the first cause of action makes it unnecessary to consider Hentzel's contention that his dismissal for protesting working conditions violated an implied convenant of good faith and fair dealing. (See *Tameny* v. *Atlantic Richfield Co.*, *supra*, 27 Cal.3d at p. 179, fn. 12.) Since we have held his complaint to state a cause of action in tort for wrongful discharge, it follows that the court erred in sustaining the demurrer to Hentzel's third cause of action, for punitive damages. (Civ. Code, § 3294; see *Commodore Home Systems, Inc.* v. *Superior Court, supra*, 32 Cal.3d 211.) This leaves the fourth and fifth causes of action of his first amended complaint, and the fifth cause of action of his original complaint, to which demurrer was sustained.

■ In support of his fourth cause of action, Hentzel invokes *Pugh* v. *See's Candies, Inc., supra*, 116 Cal.App.3d 311, which held that under the circumstances of that case, an employee was entitled to a jury determination as to the existence, and alleged breach, of an implied promise on the part of his employer not to terminate him arbitrarily, or without cause. The facts of that case were quite different from those alleged in Hentzel's complaint, however. Pugh had been employed for 32 years, he had received consistent commendation and promotions for his work, he had been assured by the president of the company that his future was secure if he did a good job, and there was evidence that the company had a policy and practice of not terminating administrative personnel except for good cause. Here, Hentzel has alleged merely that defendants "implied" that he would not be terminated so long as the services he performed were satisfactory. While an implied in-fact contract arises from conduct, without express words of agreement, so that "only the facts from which the promise is implied must be alleged" (*Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 247 [74 Cal.Rptr. 398, 449 P.2d 462]; see also *Thompson* v. *California Brewing Co.* (1957) 150 Cal.App.2d 469, 473 [310 P.2d 436]), we conclude that Hentzel has not alleged facts sufficient to support such an implication. Since *Pugh* had not been decided at the time of the court's ruling on the demurrer, however, we consider it appropriate to allow plaintiff to amend his complaint to allege such facts if he can. ■ We reach the same conclusion with respect to the fifth cause of action, based on estoppel. (Cf. *Division of Labor Law Enforcement* v. *Transpacific Transportation Co.* (1979) 88 Cal.App.3d 823 [152 Cal.Rptr. 98].)

The trial court's ruling sustaining demurrer to the fifth cause of action of the original complaint, for the tort of intentional infliction of emotional distress, was apparently based upon Singer's argument that the subject matter was preempted by the workers' compensation act (Lab. Code, § 3600 et seq.). It has been held, however, that the tort of intentional infliction of emotional distress constitutes "an entire class of civil wrongs outside the contemplation of the workers' compensation system" (*Renteria* v. *County of Orange* (1978) 82 Cal.App.3d 833, 841 [147 Cal.Rptr. 447]), and that in the absence of allegations of disability compensable under the workers' compensation scheme a suit may be maintained, seeking recovery for such damages (*McGee* v. *McNally* (1981) 119 Cal.App.3d 891, 895 [174 Cal.Rptr. 253]; see also *Johns-Manville Product Corp.* v. *Superior Court* (1980) 27 Cal.3d 465 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758]). Following this authority, we conclude that the trial court erred in sustaining the demurrer to this cause of action.

The cause is reversed and remanded for further proceedings consistent with the views expressed herein.

Miller, J., and Smith, J., concurred.