35 F.3d 570
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gregory Louis DEPUYDT, Plaintiff-Appellant,
v.
FMC CORPORATION, Defendant-Appellee.
 No. 92-16729.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 10, 1994.
Decided Sept. 7, 1994.
 
 Before: POOLE, BEEZER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Gregory DePuydt appeals the district court's partial summary judgment on his claim against FMC Corporation for wrongful termination in violation of public policy. As the parties are familiar with the facts, we need not discuss them. We review de novo the district court's grant of summary judgment, Jones v. Union Pac. R.R., 968 F.2d 937, 940 (9th Cir.1992), and we affirm.
 
 
 3
 * FMC argues as a threshold issue that we lack jurisdiction over this appeal. It contends that the district court should not have entered an appealable final judgment pursuant to Federal Rule of Civil Procedure 54(b). We find no error and conclude that we have jurisdiction.
 
 
 4
 Rule 54(b) permits district courts to "direct the entry of a final judgment as to one or more but fewer than all of [multiple] claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Before issuing a Rule 54(b) order, a district court must first evaluate the interrelationship between all the claims, to ensure that final judgment has been entered on at least one entire claim and to avoid piecemeal litigation. See Curtiss-Wright Corp. v. General Elec. Corp., 446 U.S. 1, 10 (1980). We review de novo this determination. Gregorian v. Izvestia, 871 F.2d 1515, 1519 (9th Cir.), cert. denied, 493 U.S. 891 (1989). The district court must then balance the equities to determine whether certification is proper, and we will reverse its determination only upon finding an abuse of discretion. Curtiss-Wright, 446 U.S. at 8, 10; Gregorian, 871 F.2d at 1519.
 
 
 5
 In this circuit, pragmatic considerations of severability and judicial efficiency determine what constitutes a claim. See Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 797-98 (9th Cir.1991); Continental Airlines v. Goodyear Tire & Rubber Co., 819 F.2d 1519, 1524-25 (9th Cir.1987). At a minimum, if a count presents substantially different legal and factual questions from other counts, it will qualify as a claim under Rule 54(b). Gregorian, 871 F.2d at 1519-20. To attack a Rule 54(b) certification, it is not enough to show some facts are in common to all of appellant's theories. Purdy Mobile Homes, Inc. v. Champion Home Builders Co., 594 F.2d 1313, 1316 (9th Cir.1979) (upholding certification where each theory involved proof of element not present in other theory).
 
 
 6
 DePuydt's tort and contract counts are substantially different both legally and factually. His tort claim raises issues concerning what constitutes a violation of the Federal Corrupt Practices Act ("FCPA"), and whether DePuydt was required to violate the FCPA. His contract claim will turn on whether an implied contract existed based on the nature of his relationship with FMC and whether cause existed for his termination. The latter question overlaps with some of the tort questions, but is by no means identical; DePuydt could have been terminated without cause but still not have been terminated in violation of public policy. Factually, the contract claim depends on events over the previous seven years, as well as the months following removal from FMC's Venezuelan project, while the tort claim depends on a much shorter period. Given these differences, the tort claim qualifies as a separate claim upon which a final judgment could be entered.
 
 
 7
 The district court's further determinations, that no reason for delay existed and the equities were in favor of certification, are entitled to special deference. The district judge is "the one most likely to be familiar with the case and with any justifiable reasons for delay." Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 10 (1980); Sheehan v. Atlanta Int'l Ins. Co., 812 F.2d 465, 468 (9th Cir.1987). At the hearing on the motion for certification, Judge Ware acknowledged that the tort claim was the main thrust of DePuydt's suit. Consequently, this case would drag out for FMC whether DePuydt was permitted to appeal this claim now or forced to wait to appeal it until after trial on the contract claim. Id. On the other hand, if DePuydt were permitted to appeal first and won, the delay and expense of holding two trials could be averted.
 
 
 8
 FMC contends that the 54(b) certification was nevertheless an abuse of discretion because the district court delayed five months after the issuance of its partial summary judgment before granting certification, a passage of time which might preclude a finding of "no reason for delay." See Schaeffer v. First Nat'l Bank of Lincolnwood, 465 F.2d 234, 235-36 (7th Cir.1972 (dismissing appeal where more than one year passed before entry of Rule 54(b) certification). We do not find Schaeffer persuasive given the facts of this case. Under the district court's accurate understanding of the relationship between the issues, granting certification was still the judicially efficient decision, even after five months. We find no abuse of discretion in the certification of this case for appeal.
 
 II
 
 9
 We turn to the merits.
 
 
 10
 This diversity case is governed by California law. In California, an employee may bring a tort action against an employer who terminates him in violation of fundamental public policy. Tameny v. Atlantic Richfield Co., 27 Cal.3d 167, 170, 164 Cal.Rptr. 839, 840 (1980). This means, inter alia, that an employer may not discharge an employee for refusing to commit illegal acts. See Foley v. Interactive Data Corp., 47 Cal.3d 654, 665-66, 254 Cal.Rptr. 211, 214-15 (1988); Tameny, 27 Cal.3d at 178, 164 Cal.Rptr. at 845-46; Petermann v. International Brotherhood of Teamsters, 174 Cal.App.2d 184, 188-89, 344 P.2d 25, 27 (1959). More generally, California's public policy exception protects employees from retaliatory dismissal for "performing an act that public policy would encourage, or refusing to do something that public policy would condemn." Gantt v. Sentry Ins., 1 Cal.4th 1083, 1095, 4 Cal.Rptr.2d 874, 882-83 (1992); accord Hentzel v. Singer Co., 138 Cal.App.3d 290, 298, 188 Cal.Rptr. 159, 164 (1982). Public policy cannot be found anywhere; the "public policy exception [must be] carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions[.]" Gantt, 1 Cal.4th at 1095, 4 Cal.Rptr.2d at 881-82.
 
 
 11
 DePuydt alleges that his termination violated public policy because he was fired for refusing to do an illegal act. Specifically, he was allegedly fired for refusing to violate the Foreign Corrupt Practices Act by preparing an intraoffice "rack-up" containing a bribe-inflated commission. DePuydt also cites to Cal.Penal Code Sec. 641.3, but that statute was not passed until 1989, the year after DePuydt was fired.
 
 
 12
 The FCPA was amended slightly after DePuydt's refusal but before DePuydt was ultimately terminated. See 15 U.S.C.A. 78dd-1 (West Ann.1994) (detailing 1988 amendments). We nevertheless consider the earlier version of the statute. The public policy at issue is the policy against conditioning continued employment on the commission of crimes. If DePuydt was fired for refusing to draft an illegal proposal, that general public policy is violated whether or not the drafting of the proposal would have been legal under later versions of the law.
 
 
 13
 At the time of DePuydt's refusal, the relevant portion of the FCPA provided that:
 
 
 14
 It shall be unlawful for any issuer [covered under the Act] ... or for any ... employee, or agent of such issuer ... to make use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money ... to--
 
 
 15
 * * *
 
 
 16
 (3) any person, while knowing or having reason to know that all or a portion of the money ... will be offered, given or promised, directly or indirectly, to any foreign official ... for purposes of--
 
 
 17
 (A) influencing any act or decision of such foreign official ... in his or its official capacity ...
 
 
 18
 (B) inducing such foreign official ... to use his or its influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,
 
 
 19
 in order to assist such issuer in obtaining or retaining business....
 
 
 20
 15 U.S.C. Sec. 78dd-1(a) (West 1981).
 
 
 21
 The act which DePuydt refused to perform was the preparation of an in-house price rack-up. Because DePuydt argues that he was required to break the law, we must decide only whether he could have prepared the rack-up without violating the FCPA. We conclude that he could have.
 
 
 22
 First and most obviously, because the proposal was for in-house use, no "instrumentality of interstate commerce" would necessarily have been involved. DePuydt was not asked to communicate an offer to Fidalgo in Venezuela; nothing in Doyle's directive required use of the mails or phones. DePuydt could therefore have prepared the rack-up legally.
 
 
 23
 Second, DePuydt lacked the requisite "corrupt" intent. In the FCPA, "[t]he word 'corruptly' connotes an evil motive or purpose, an intent to wrongfully influence the recipient." Senate Comm. on Banking, Housing, and Urban Affairs, Foreign Corrupt Practices Act of 1977, S.Rep. 114, 95th Cong., 1st Sess., reprinted in 1977 U.S.S.C.A.N. 4098, 4108 (1977). Even if the rack-up could qualify as an act "in furtherance of an offer, payment, promise to pay or authorization" of payment, DePuydt did not intend to influence Fidalgo to pay bribes. Indeed, he refused to prepare the rack-up precisely because he was concerned that an increased commission might have that effect. Even if DePuydt had made use of intrumentalities of interstate commerce, he would not have done so corruptly.
 
 
 24
 Consequently, DePuydt's preparation of a rack-up fails both the mens rea and actus reus requirements of the FCPA. He could have followed orders without breaking any law. His continuing employment was not conditioned on committing illegal acts. Consequently, his termination does not implicate Tameny's prohibition on firing employees for refusing to violate the law.[1] The district court correctly entered summary judgment against DePuydt on his public policy discharge claim.
 
 
 25
 In light of our affirmance of summary judgment in favor of FMC, we need not consider the merits of the district court's other orders involved in this appeal.
 
 III
 
 26
 For the foregoing reasons, we affirm the district court's summary judgment in favor of FMC on Gregory DePuydt's claim for wrongful termination in violation of public policy.
 
 
 27
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 DePuydt attempts to analogize his case to Collier v. Superior Court, 228 Cal.App.3d 1117, 279 Cal.Rptr. 453 (1991). This reliance is misplaced. In Collier, the plaintiff was fired for reporting "reasonably suspected" bribery. See also Hentzel v. Singer CO., 138 Cal.App.3d 290, 298, 188 Cal.Rptr. 159, 164 (1982) (employer cannot fire employee for reporting "reasonably believe[d]" health and safety violations). While reasonable suspicions have proved enough when an employee is reporting conduct, no California cases have ever held a reasonable belief enough where an employee refuses to act. Because this is a refusal case, not a reporting case, Collier is inapposite